Syllabus.

# Richmond.

## KIDD V. DE WITT, JR.

### November 18, 1920.

1. AUTOMOBILES—*Master and Servant—Liability of Master.*—The liability or non-liability of the owner of a car for the negligence of his chauffeur depends upon whether the chauffeur, at the time of the accident, was acting within the scope of his employment and in the discharge of the master's business.

2. AUTOMOBILES—*Master and Servant—Liability of Master.*—The principles of liability of motor car owners in this State are the established principles that fix the liability of the master to third persons, for torts committed by his servant resulting in injury to such persons. The advent of the automobile has introduced no new principle in this branch of the law of agency. If the liability of the owners of automobiles for torts committed by their servants is to be extended and enlarged, so as to include injuries inflicted when the servant is engaged about his own, and not the master's business, that extension should be afforded by the legislative department in the exercise of its own proper authority.

3. MASTER AND SERVANT—*Liability of Master—Scope of Employment—Deviation.*—Once in control of the master's property, it is no answer that the servant acted improperly in its management, or that he has failed to perform his duty in the strictest and most convenient manner, as, for instance, when the servant, on the master's business, deviates from the most direct road, to accomplish some purpose of his own. In such case he is still discharging the master's business, though coupled with his own affairs. This joinder of the servant's and the master's business will not relieve the master from responsibility, if the deviation is not too extensive.

MASTER AND SERVANT—*Liability of Master—Scope of Employment—Deviation.*—But where there is not merely deviation but a total departure from the course of the master's business, so that the servant may be said to be on a frolic of his own, the master is no longer answerable for the servant's conduct.

5. AUTOMOBILES—*Liability of Owner for Negligence of Chauffeur.*—Where a chauffeur uses the employer's auto for his own per-

sonal and private purpose, without the consent, express or implied, of the owner, the latter is not liable for injuries caused by the former's negligent operation of the machine.

6. AUTOMOBILES—*Master and Servant*—*Case at Bar.*—The wife of the owner of an automobile directed her husband's chauffeur to take her cook from Lynchburg to Amherst and bring her back. After taking the cook to her destination the chauffeur went off on a joy-ride or trip of his own for about an hour and a half or two hours. While on this trip he picked up a friend and started back to Lynchburg, and ran into and injured plaintiff's car. At the time of the accident the chauffeur was neither going for the cook, nor returning with her.

*Held:* That the owner of the car was not liable for the negligence of the chauffeur.

Error to a judgment of the Circuit Court of Amherst county in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*I. T. Coleman, Jr.,* for the plaintiff in error.

*Caskie & Caskie,* for the defendant in error.

SAUNDERS, J., delivered the opinion of the court.

This is an action of trespass on the case by Harvey F. Kidd (plaintiff below) against Clinton DeWitt, Jr. (defendant below), for damages inflicted upon the automobile of the said Kidd by the automobile of the said DeWitt, while the same was in charge of and being driven by the chauffeur of the latter. The pertinent facts necessary for the proper understanding and disposition of this case may be briefly stated.

DeWitt, the defendant, lives in Lynchburg. Sometime in April, 1919, Piney Coles, the cook of Mr. DeWitt, wrote

a note to Mrs. DeWitt asking permission for William Scott, DeWitt's chauffeur, to take her and her husband in the defendant's Cadillac car to visit her husband's mother in Amherst. Mrs. DeWitt acceded to this request and told William, the chauffeur, that he could carry Piney over to Amherst as requested and bring her back. Pursuant to this authority, the chauffeur took the cook to Amherst county and delivered her at her destination. He was invited to come in and wait until the cook was ready to return, but declined to do so, and went off, returning about five o'clock with one Walter Mason, a friend. Having taken up the cook, the chauffeur returned to Mr. DeWitt's home in Lynchburg without mishap. It does not appear precisely where William Scott took the car when he left the cook at three o'clock, but apparently he returned to Lynchburg, or to the outskirts of the city, for it appears from the testimony of his friend, Walter Mason, that he "got in the DeWitt car about 3 o'clock, or 3:15, and that they rode over into Amherst county about the colored church, staying there about twenty minutes; that they rode up the road a little to the main road, and William asked him if he wanted to go to town; that he said he did not care; and that they came down the Amherst hill towards Lynchburg." While descending this hill at a very rapid rate, Scott ran into the automobile of the plaintiff, damaging it very seriously. Scott did not tarry to see what mischief had been done, but proceeding on down the hill, entered upon a road that took him back through Madison, and "thence into the main road at the top of the hill." At this point he stopped, and the witness, Mason, went over to the scene of the accident. Returning to the car the witness and Scott drove out for Piney Coles, and taking her and husband on board, the return trip to Lynchburg, as stated, *supra,* was made without mishap. There is no question that the defendant, DeWitt, owned the car which inflicted the

injury, or that William Scott was his regularly employed chauffeur.

The defendant demurred to the evidence, and the court sustaining the demurrer, the plaintiff applied for and secured a writ of error from one of the judges of this court.

The plaintiff in error insists that the evidence discloses that at the time of the accident the chauffeur was engaged in and about the business of the defendant, and was within the scope of his employment. The action of the court holding otherwise is assigned as error. The defendant in error submits two main contentions. First, that the automobile was loaned to Piney Coles to make the trip to Amherst; Second, that at the time of the accident, William Scott, the chauffeur, was not engaged in and about the business of the defendant in error (the defendant), nor within the scope of his employment as chauffeur, but was acting contrary thereto, and for his own purposes or pleasure.

With respect to the first contention, it suffices to say that the evidence very clearly and sufficiently shows that the defendant's wife, who acted for her husband, the owner of the car, did not loan the same to Piney Coles, but did authorize William Scott, in his capacity of chauffeur of the husband, to take Piney over to Amherst and bring her back. This is the clear and natural import of the evidence on this subject, fairly and reasonably construed.

Before taking up the second contention of the defendant, we will dispose of the contention of the plaintiff in error, that Piney Coles was in the defendant's car at the time of the accident. Of course, if this was the case, if Scott, the chauffeur, was returning to Lynchburg with defendant's cook when the negligent injury was inflicted, that fact would be a most material and determining circumstance to establish the liability of the defendant. It was the plain direction of Mrs. DeWitt to William Scott to take Piney Coles to Amherst and bring her back, and the master, or owner

56

of the car, was clearly responsible for negligent injuries inflicted upon others by Scott, his chauffeur, in carrying out this direction.

But after the most careful and painstaking scrutiny of the evidence, we are unable to find any support for the contention that Piney Coles was in the car when the accident occurred. A finding of the trial court fixing liability upon the defendant upon a conclusion to that effect would have been manifest and palpable error.

The main facts in this case stand out in clear relief in the testimony, and one of these outstanding facts is that after William Scott discharged Piney Coles and her husband at their point of destination, he went off on a trip of his own, and while on that trip, or joy-riding adventure, picked up Walter Mason, and after riding him for a while the two started back to Lynchburg. The accident occurred on the return to Lynchburg. "Going down the Amherst hill to Lynchburg," on this return, Scott practically had his back turned upon the house where he had left Piney Coles and her husband. He was not going after *her*, but was taking Mason to Lynchburg. Scott was joy-riding for about an hour and a half or two hours. He left Piney Coles about three o'clock P. M., and returned for her about five P. M.

[1, 2] Having in mind the established facts, (1) that Scott was the defendant's chauffeur, and (2) that the car that he was driving was the property of the defendant, the liability or non-liability of the latter depends upon the answer to the following inquiry: Was the chauffeur, at the time of the accident, acting within the scope of his employment and in the discharge of the master's business?

The principles of liability of motor car owners in this State are the established principles that fix the liability of the master to third persons, for torts committed by his servant resulting in injury to such persons. The advent

of the automobile has introduced no new principle in this branch of the law of agency. If the liability of the owners of automobiles for torts committed by their servants is to be extended and enlarged, so as to include injuries inflicted when the servant is engaged about his own and not the master's business, that extension should be afforded by the legislative department in the exercise of its own proper authority.

This court has said in *Blair* v. *Broadwater*, 121 Va. 301, 93, S. E. 632, L. R. A. 1918-A, 1011, that "the only safe course to pursue is to revert to first principles, and adhere to ancient landmarks, rather than to yield a too ready allegiance to an admittedly new principle sought to be engrafted upon the law of master and servant and principal and agent, to meet supposed exigencies of new conditions incident to the advent of automobiles." The doctrine of *respondeat superior* rests upon the relation of master and servant. That relation exists in this case. But the plaintiff seeking recovery for alleged injuries must not only establish this relationship, but further, (1) that the servant at the time of the commission of the tort was about his master's business, and (2) that the servant was acting within the scope of his employment. This brings us to the query stated, *supra*.

The rule or condition of liability is simple enough, and readily stated, but it is often a vexatious and perplexing question to determine whether upon some particular state of facts the master is charged with liability. The basis of liability is that one who employs another to do an act for his benefit, and who has the choice of the agent must take the risk of injury to third persons by the mode or character of the servant's performance. "The master is liable if the act done is in the execution of the master's business, within the scope of his employment." *Stone* v. *Hills*, 45 Conn. 44, 29 Am. Rep. 635.

But if a servant acts without reference to the service in which he is employed, to effect some independent purpose of his own, the master is not liable. *Ritchie* v. *Waller*, 38 Am. St. Rep. 370, note; *Stephenson* v. *Southern Pac. Co.*, 93 Cal. 558, 29 Pac. 234, 15 L. R. A. 475, 27 Am. St. Rep. 223.

"If a servant wholly, for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it does an injury to another not within the scope of his employment, the master is not liable." *Howe* v. *Newmarch*, 12 Allen (Mass.) 57.

"Servant's deviation from the business of his master for the sake of accomplishing a personal or individual object disconnected with his master's business, will relieve the master from liability for injuries occasioned by the servant's wrongful or negligent acts committed while such deviation continued. If a servant abandons, or departs from the business of his master and engages in some matter suggested solely by his own pleasure, or convenience, or pursues some object which relates to an end or purpose which may be said to be the servant's individual and exclusive business, and while so engaged commits a tort, the master is not answerable, although he was using the master's property, and although the injury could not have been caused without the facilities afforded to the servant by reason of his relations to his master." Note 35, Am. Dec., p. 194, and cases cited.

[3, 4]   Once in control of the master's property, it is no answer that the servant acted improperly in its management, or that he has failed to perform it in the strictest and most convenient manner, as for instance when the servant, on the master's business, deviates from the most direct road to accomplish some purpose of his own. In such case he is still discharging the master's business, though coupled with his own affairs. This joinder of the servant's and

the master's business will not relieve the master from responsibility, if the deviation is not too extensive. There are many cases illustrating and applying this principle.

"But where the servant, instead of doing that which he is employed to do, does something which he is not employed to do at all, the master cannot be said to do it by the servant, and therefore is not responsible for the negligence of the servant." · *Mitchell* v. *Crassweller*, 13 C. B. 246.

"In cases of deviation, the authorities are clearly to the effect that a mere departure by the servant from the strict course of his. duty, even for a purpose of his own will not in and of itself be such a departure from the master's business as to relieve him of responsibility. But where the deviation is very marked and unusual, the court may determine that the servant was not on the master's business at all, but on his own." *Ritchie* v. *Waller*, 63 Conn. 162, 28 Atl. 31, 27 L. R. A. 167, 38 Am. St. Rep. 365-6.

"Not every deviation of the servant from the strict execution ·of his duty, nor every disregard of particular instructions will be such an interruption of the course of employment as to determine or suspend the master's responsibility. But where it is not merely deviation but a total departure from the course of the master's business, so that the servant may be said to be 'on a frolic of his own,' the master is no longer answerable for the servant's conduct." Pollock on Torts (6th ed.), p. 76. See to same effect *Joel* v. *Morrison*, 6 Car. & P. 501; *Ritchie* v. *Waller*, 63 Conn. 162, 28 Atl. 31, 27 L. R. A. 167, 38 Am. St. Rep. 366.

"The defendants, citizens of the town of Glastonbury employed Smith as a. driver. They directed him to carry a load of paper to one Taylor, and return therefrom by way of Nipsic with a load of lumber. On reaching Taylor's, the latter requested Smith to deliver the paper in the city of Hartford, 4½ miles from Taylor's, and to go to a railway station in the city and get some freight belonging to Taylor

and transport it to his place. Smith acceded to this request, and while in the railway station paying Taylor's freight bill, the horses which had been negligently left unhitched and unattended became frightened by a passing train, and running away collided with B's wagon, injuring it. Held, that the defendants were not liable." (Syllabus.) *Stone* v. *Hills,* 45 Conn. 44, 29 Am. Rep. 635.

There are many cases illustrating the principles appearing in the cases cited, *supra,* that deal specifically with automobiles. A few of the pertinent ones will be cited.

In the case of *Slater* v. *Advance Thresher Co.,* 97 Minn. 305, 107 N. W. 133, 5 L. R. A. (N. S.) 598, the automobile was being operated by a State agent of the defendant company, to whom the car had been furnished for the business of the company. At the time of the accident he and the general agent of the company were in the car, but were on a personal mission, independent of the business of the company. It was held that there was no liability on the company for the accident, as the automobile was not at the time being used in the course of the employment of the owner, the court holding that the words, "in the course of his employment," mean, "while engaged in the service of the master," and nothing more; and further that the expression is not synonymous with "during the period covered by the employment."

In the case of *Cavanaugh* v. *Dinsmore,* 12 Hun (N. Y.) 465, referred to in the case cited last, *supra,* a chauffeur had been sent with a truck to a stable, after delivering certain merchandise. While there he met a friend, also a driver for the defendant, and at his request drove about a mile distant in another direction. The court held that there was no liability on the master for an accident occurring during this ride.

"Where a chauffeur uses his employer's automobile for his own personal pleasure, and contrary to authority, a

party negligently injured by the car cannot hold the employer liable, since the operator of the machine was not at the time acting for his employer, and within the scope of his employment." Huddy on Automobiles, p. 287.

"Any driving for the chauffeur's own pleasure, at times or to places not authorized expressly or by implication by the employer, does not constitute driving for the employer, and an injury occurring while so driving will not bind the employer." *Id.,* p. 295.

In the case of *Patterson* v. *Kates* (C. C.), 152 Fed. 481, it appears that "the defendant owned an auto which broke down on the way from Atlantic City to Philadelphia, and he left it with his chauffeur, with directions to repair it and bring it to Philadelphia. After the driver had reached the Delaware river, and while waiting for the ferry, he agreed to take a third party in the machine to a place about a mile back on the road, and while making the trip the car collided with a horse and buggy, injuring the driver. Held, that the owner was not liable for the injury, since the servant was engaged about his own and not the owner's business."

[5] Where a chauffeur uses the employer's auto for his own personal and private purpose, without the consent, express or implied, of the owner, the latter is not liable for injuries caused by the former's negligent operation of the machine." *Steffen* v. *McNaughton,* 142 Wis. 49, 124 N. W. 1016, 19 Ann. Cas. 1227.

"The owner of an automobile cannot be held liable for the killing of a child by his chauffeur where it appears that the accident occurred when the chauffeur was not using the machine in the course of his employment, and on the master's business, but on the contrary in practical opposition to the master's instructions, and upon a pleasure trip in which the chauffeur's personal friends or acquaintances

were sharing the pleasure with him." *Sarver* v. *Mitchell,* 35 Pa. Super. Ct. 69.

"Where a chauffeur was told to take the defendant's car to a hotel at a specified time, and instead takes the automobile in another direction to call on a friend, and while returning runs against plaintiff's horse, which ran away and injured plaintiff, defendant is not liable for the injuries, a master not being liable for an injury caused by his servant not acting within the scope of his employment. *Denforth* v. *Fisher,* 75 N. H. 111, 71 Atl. 535, 21 L. R. A. (N. S.) 93, 139 Am. St. Rep. 670.

[6] These citations might be prolonged, but to no useful purpose. It is not difficult to apply the principles announced in the authorities cited to the disposition of the case in judgment, and reach a conclusion. Having in mind that when the accident took place the chauffeur was "on a frolic of his own," that he was neither going for nor returning with the cook; that he was not authorized by the master, either expressly or by implication, to while away the period intervening between the delivery of the cook at her place of destination and the time of her return in joy-riding with a friend; it must be clear, upon principle and authority, that the defendant is not liable, as the owner of the car for the tortious acts of the servant during that period.

This court finds no error in the action of the Circuit Court for Amherst county in sustaining the demurrer, and that action is approved.

*Affirmed.*