# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## CAROLYN F. DRAKE v. NORFOLK STEAM LAUNDRY CORPORATION.

### March 15, 1923.

### Absent, Burks, J.

1. MASTER AND SERVANT—*Liability of Master for Negligence of Servant—Basis of Liability.*—The basis of the liability of a master for the negligence of his servant is that one who employs another to do an act for his benefit, and who has the choice of the agent, must take the risk of injury to third persons by the mode or character of the servant's performance.

2. MASTER AND SERVANT—*Liability of Master for Acts of Servant—Scope of Employment—Servant Combining his own Business with that of the Master.*—If the act is done while the servant is at liberty from service, and pursuing his own ends exclusively, there can be no question of the master's freedom from all responsibility, even though the injury complained of could not have been committed without the facilities afforded to the servant by his relation to his master. On the other hand, where a servant is allowed by his master to combine his own business with that of the master, or even to attend to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured by his negligence, but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master in the act, the negligent performance of which caused the injury.

3. MASTER AND SERVANT—*Liability of Master for Negligence of Servant—Scope of Employment—Deviation—Questions of Law and Fact.*—In actions against a master for injuries caused by the negligence of his servant, where the servant's deviation from the scope of his employment is slight and not unusual, the court may as a matter of law determine that the servant was acting within the scope of his employment; where the deviation, however, is very marked and unusual, the court may as a matter of law determine that the servant was not acting within the scope of his employment; and where the facts leave the case between these two extremes, the question should be left to the jury.

4. Master and Servant—*Liability of Master for Negligence of Servant— Scope of Employment—Deviation—Questions of Law and Fact—Case at Bar.*—In the instant case, an action against a master for injuries arising out of the negligence of his servant, there had been a deviation by the servant from the scope of his employment. The Supreme Court of Appeals was of the opinion that the deviation was slight and not unusual, and that the trial court might have determined that the servant was acting within the scope of his employment, or that the case belonged to that class where the question of whether the servant was acting within the scope of his employment was for the jury. The court in its instructions took the position that the question of whether the servant was acting within the scope of his employment was for the jury.

*Held:* That the instructions presented to the jury as favorable a view of the case as the defendant was entitled to demand.

5. Master and Servant—*Liability of Master for Negligence of Servant— Deviation of Servant from Scope of Employment—Case at Bar.*—In the instant case, an action against a master for negligence of his servant, plaintiff was injured in an automobile collision with a truck of the master driven by the servant through the servant's negligence. It appeared from the evidence that it was not unusual for the servant, a stableman, to drive the trucks of the master from the master's place of business to the stables. At the time of the accident the servant was thus engaged in taking a truck to the stables, but went out of his way to get a suit of clothes for himself before putting the truck away. He had charge of the truck as defendant's employee for the purpose of putting it away. His relationship as such employee accounted for his being at the wheel, and it was both the primary and ultimate object of the trip to put the truck in the stable. It was not a case of a driver taking a vehicle for purposes of his own, either with or without authority from the owner, but a case of going out of the way for purposes of his own on an errand which began and was to end in the service of the owner; and the deviation from the more direct route, though made for the convenience and accommodation of the driver, appeared to have been made with the knowledge and acquiescence of his master's foreman.

*Held:* That a verdict for the plaintiff was sufficiently supported by the evidence, and ought not to have been set aside.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by motion for a judgment for damages.    Judgment for defendant.    Plaintiff assigns error.

*Reversed and final judgment entered for the plaintiff.*

The opinion states the case.

*Jonathan W. Old, Jr.,* and *N. T. Green,* for the plaintiff in error.

*S. Burnell Bragg,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

An automobile truck owned by the Norfolk Steam Laundry Corporation and driven by a colored man named Solomon Wilson collided with a Ford sedan in which Mrs. Carolyn F. Drake was a passenger. Mrs. Drake was severely injured and brought this action for damages against the laundry corporation. There was a verdict in her favor, but the trial court set it aside and entered final judgment for the defendant, and thereupon Mrs. Drake obtained this writ of error.

The alleged negligence of the truck driver is not seriously controverted. The sole question before us is whether the defendant can be held liable under the doctrine of *respondeat superior* for the consequences of the driver's negligent management of the truck.

Disregarding some very serious conflict of evidence which must be considered as settled adversely to the defendant by the verdict, and stating the facts as the jury would have been warranted in finding them, the case is this: The defendant corporation operates a steam laundry on the north side of Main street between Chapel and Fenchurch streets in the city of Norfolk. In the rear of the block on Bermuda street (north of and parallel with Main street), it has a garage in which it keeps some of its trucks. South of Main street, in Foster's lane (which enters Main at right angles some distance east of the laundry), it has a stable in which

are kept its horses and wagons and three of its trucks. The accompanying sketch, taken from a map used at the oral argument of this case, and conceded to be approximately correct, shows the situation.  The figure 1 indicates the stable, 2 the laundry, 3 the point of collision, 4 the tailor shop (referred to below):

Solomon Wilson was an employee of the defendant corporation.  He had been continuously in its service for eight or nine years, having lost only three days from his work during that time.  He was known as the "stable man," and his principal duty was to take care of the horses and wagons and the three trucks kept at the stable..  He was not one of the truck drivers, but he was nevertheless often called upon as a general utility man and had several times driven trucks for the defendant from Ocean View to Norfolk.  It frequently

happened that a truck would be left standing in front of the laundry at the close of the day's work, and in such cases it was not unusual for him to drive the truck to the stable and put it away. He had been doing this with the knowledge and sometimes at the request of the defendant for some time prior to the accident, and was warranted in regarding it, as he says he did regard it, a part of his duty.

The accident to Mrs. Drake occurred between four and five o'clock in the afternoon. Just before moving the truck which collided with the Drake car, Wilson had, at the express direction of the defendant's manager, unloaded another truck, driven it to the Bermuda street garage, and put it away. He then returned to the laundry. There was at that time standing in front of the laundry and headed west on Main street one of the trucks which was regularly kept overnight at the stable, and it was this latter truck which Wilson was driving when the accident occurred. The regular driver of this particular vehicle was settling up his wage account with the laundry foreman, and Wilson remarked, either to the foreman or to the driver in the foreman's presence, that he "was going up Church street to get a suit of clothes before he put it (the truck) away." The foreman offered no objection. The suit of clothes referred to was one which Wilson had left with a tailor on Church street about six and a half blocks north from the laundry.

The truck in question could not be turned in Main street, and in order to reach the stable in Foster's lane, which, as shown above, was east of him, Wilson was obliged to start west and drive around a block or more, either to the north or to the south of the laundry. He could have gone west on Main street to Reid's lane, then South to Water street and then east to Foster's

lane; or he could have gone west on Main to Fenchurch, then north to Bermuda, then east to Chapel, then south to Main and then east to Foster's lane. The latter would perhaps have been the shorter route.

What Wilson actually did was to drive west on Main to Fenchurch, then north to Holt, then west to Church; and he was proceeding north on the latter street when the accident happened. The tailor shop was a block or two further north, between Charlotte and Wood streets, and his purpose was to get his clothes from the shop and come back to the stable at Foster's lane by way of Wood, Chapel and Main streets.

Either of the nearer routes above indicated would have first taken Wilson, as he actually proceeded, west on Main street and in the opposite direction from the stable. One of these routes, perhaps the better one, would have taken him a short distance north on Fenchurch, still further away and still in the opposite direction from the stable. Either route would have been somewhat indirect and circuitous. He would have taken one of these nearer routes if he had not wanted to stop at the tailor shop; but it is to be remembered that he had charge of the truck as the defendant's employee for the purpose of putting it away for the night. His relationship as such employee accounted for his being at the wheel, and it was both the primary and ultimate object of his trip to put the truck in the stable. It was not a case of a driver taking a vehicle for purposes of his own, either with or without authority from the owner, but a case of going out of the way for purposes of his own on an errand which began and was to end in the service of the owner; and the deviation from the more direct route, though made for the convenience and accommodation of the driver, appears in this case to have been made with the knowledge and acquiescence

of the owner's foreman.    If the collision had not oc-
curred, the entire trip, including the stop for the suit of
clothes, would have been completed in not exceeding
fifteen minutes.

The foregoing are the facts as shown by the evidence
which tend to support the verdict, and upon such facts
we must decide the case.    The evidence for the de-·
fendant was in many respects to the contrary, and
would, if fully credited, entitle the defendant to a ver-
dict and judgment; but the jury settled in favor of the
plaintiff all conflicts in the evidence.

[1]  The general rule of law applicable to the case may
be regarded as reasonably well settled.    As said by
Judge Saunders, speaking for this court in *Kidd* v. *De-
Witt*, 128 Va. 438, 443, 105 S. E. 124, 125:  "The rule
or condition of liability is simple enough, and readily
stated, but it is often a vexatious and perplexing ques-
tion to determine whether upon some particular state of
facts the master is charged with liability.    The basis of
liability is that one who employs another to do an act
for his benefit, and who has the choice of the agent,
must take the risk of injury to third persons by the
mode or character of the servant's performance."

[2]  The following extract from 1 Shearman & Red-
field on Negligence (6th ed.), sec. 147, p. 360, is directly
applicable to this case:

"Sec. 147. What acts are within employment.—In
determining whether a particular act is done in the
course of the servant's employment, it is proper first to
inquire whether the servant was at the time engaged in
serving his master.    If the act is done while the servant
is at liberty from service, and pursuing his own ends
exclusively, there can be no question of the master's
freedom from all responsibility, even though the injury
complained of could not have been committed without

the facilities afforded to the servant by his relation to his master. On the other hand, where a servant is allowed by his master to combine his own business with that of the master, or even to attend to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured by his negligence; but the master will be held responsible, unless it clearly appears that the servant could not have been directly or indirectly serving his master in the act, the negligent performance of which caused the injury."

In *Loomis* v. *Hollister*, 75 Conn. 718, 55 Alt. 561, the facts are stated in the opinion as follows: "The defendant's team was in charge of his servant, named Beebe. The following facts were claimed by the parties to have been proved: The defendant had employed Beebe the preceding May. His daily duties were, early in the morning, to take the defendant's team and deliver ice over a route covering several miles, and drive the horses back to the defendant's stables. Upon returning to the stables his duties ended for the day, until six o'clock, when he would ordinarily feed the horses. When Beebe was first employed, in May, the defendant went about with him in the peddling of ice, and showed him the specific route to take. On the day in question Beebe started with the team from the stables at an early hour in the morning, and was returning to the stables after making the last delivery of ice, on the natural route home, and the one specifically prescribed for him by the defendant; but instead of continuing on this route he took a roundabout and longer route for the purpose of stopping at the postoffice to get his paper. He went into the postoffice, leaving the horses unhitched and unattended. It was then about 1:30 p. m. The horses had not been fed for seven hours, and were left

standing, headed towards the stables, which were about a quarter of a mile distant. While Beebe was in the postoffice the horses started for home, ran against the wagon of the plaintiff, and so caused her injury.''

Upon the foregoing facts it was held on appeal that the following charge given by the trial court to the jury was correct: ''Not every deviation of the servant from the strict execution of his duty, nor every disregard of particular instructions, will be such an interruption of the course of employment as to determine or suspend the master's responsibility. But where there is not merely a deviation, but a total departure, from the course of the master's business, so that the servant may be said to be on a frolic of his own, the master is no longer liable for a servant's conduct. Now, gentlemen, was there such a total departure from the defendant's business when this accident occurred that the defendant is not answerable for this act of negligence, if you find that fact to exist? The plaintiff contends, gentlemen, that there has been no such deviation—no such total departure—from the business of the defendant as to permit him to escape responsibility. Well, gentlemen, that is a question of fact. And in that connection you will consider the instructions, if any, that this defendant gave to this man Beebe; you will examine the maps as to the location of these streets, if necessary, consider the defendant's business, with all of its bearings, the location of his stables, the distance by different routes, and all of the other facts and circumstances pertaining to this question; and in that way, gentlemen, you will determine this issue of the case.''

The case of *Kidd* v. *DeWitt*, *supra*, is cited and relied upon by counsel on both sides of the present controversy. As we understand and interpret the decision in that case it supports Mrs. Drake's right to recover upon

the facts which the jury evidently found to be true. The opinion, in the course of a somewhat extended review of the authorities, says:

"Once in control of the master's property, it is no answer that the servant acted improperly in its management, or that he has failed to perform it in the strictest and most convenient manner as for instance, when the servant, on the master's business, deviates from the most direct road to accomplish some purpose of his own. In such case he is still discharging the master's business, though coupled with his own affairs.   The joinder of the servant's and the master's business will not relieve the master from responsibility, if the deviation is not too extensive.   There are many cases illustrating and applying this principle."

In the case of *Ritchie* v. *Waller*, 63 Conn. 162, 28 Alt. 31, 27 L. R. A. 161, 38 Am. St. Rep. 361, referred to approvingly by Judge Saunders in *Kidd* v. *DeWitt*, it was said:

"In cases of deviation, the authorities are clearly to the effect that a mere departure by the servant from the strict course of his duty, even for a purpose of his own, will not in and of itself be such a departure from the master's business as to relieve him from responsibility. But where the deviation is very marked and unusual, the court may determine the servant was not on the master's business at all, but on his own."

[3-5] In the latter case, *Ritchie* v. *Waller*, it was pointed out that cases belonging to the general character of the instant case are to be classified as follows: (1) Where the deviation is slight and not unusual, the court may as a matter of law determine that the servant was acting within the scope of his employment; (2) where the deviation is very marked and unusual, the court may determine that the servant was not acting

within the scope of his employment; (3) where the facts leave the case between these two extremes, the question should be left to the jury.

We decided that the case of *Kidd* v. *De Witt* fell within the second of the above classes. In our opinion the instant case belongs either to the first or the third class. The court and counsel below seem to have proceeded with the trial on the theory that it belonged to the third class as shown by the following instructions given to the jury, the first two at the request of the plaintiff and the last two at the request of the defendant, to-wit:

1.

"The court instructs the jury that if they find from the evidence in this case that the plaintiff's injuries are due solely to the negligence on the part of Solomon Wilson, and that at the time of committing said negligence the said Wilson was an employee of the defendant and acting within the scope of his employment about his employer's business, they should find for the plaintiff.

"That if you believe from the evidence that Wilson was acting within the scope of his employment and about his employer's business the jury are instructed that a mere deviation or departure from the usual and ordinary route from the laundry to the stable even to accomplish some private purpose of his own in connection with the business of his employer, does not of itself as a matter of law relieve the employer of liability. Whether such departure or deviation is sufficient to relieve the defendant of responsibility for Wilson's act is a question of fact to be determined by the jury from the facts and circumstances proven in the case.

2.

"The court instructs the jury that if they believe from

the evidence that at the time of, and for some time prior to, the collision in question it was the custom for Solomon Wilson to take the wagons and trucks from the laundry of the defendant on Main street and drive them to the stables on Foster's lane, and that this custom was known to the agents of the defendant at said laundry prior to the collision in question, and had been on prior occasions acquiesced in, allowed and permitted by them, then the fact that the said Solomon Wilson was not employed originally for such duties is no defense to this action.

3.

"The court instructs the jury that it is incumbent upon the plaintiff to prove by a preponderance of the evidence that the driver of the truck (Sol. Wilson) was the agent of the defendant and was using the truck in the course of his employment, transacting business for the defendant.

4.

"The court instructs the jury that liability cannot be cast upon the defendant because it owned the car or because Sol. Wilson, the driver, at the time of the accident, was in the employ of the defendant, unless it is proven by a preponderance of the evidence that the use of the car in question at the time of the accident was in the execution of the defendant's orders or in the doing of its work."

The foregoing instructions presented to the jury as favorable a view of the case as the defendant was entitled to demand, and we are of opinion that the verdict for the plaintiff was sufficiently supported by the evidence and ought not to have been set aside. *Forbes & Co.* v. *Southern Cotton Oil Co.,* 130 Va. 245, 108 S. E. 15;

*Palmer* v. *Showalter*, 126 Va. 306, 101 S. E. 136; *J. Leon Wood & Co.* v. *Aronberg*, 132 Va. 126, 110 S. E. 351.

The judgment complained of will be reversed, and we will enter an order here awarding judgment to the plaintiff in accordance with the verdict of the jury.

*Reversed and final judgment entered for the plaintiff.*