# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## B. J. KAVANAUGH, AND OTHERS V. C. W. WHEELING.

February 26, 1940.

Record No. 2110.

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

106

The opinion states the case.

*Williams & Robertson* and *Henry M. Sackett, Jr.*, for the plaintiffs in error.

*Carter & Williams* and *Mary H. Williams*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was brought by C. W. Wheeling against B. J. Kavanaugh and F. P. Kavanaugh, partners, trading as the Lynchburg Rendering Company, and Thomas J. Hurley, to recover damages from personal injuries caused by the negligent operation of an automobile belonging to the Lynchburg Rendering Company, and driven by Hurley, an employee of that firm.

B. J. and F. P. Kavanaugh, sometimes referred to as the defendants, plead the general issue and filed an affidavit, under Virginia Code 1936, section 6126, denying that their automobile, at the time of collision, was being operated or controlled by them, or was being used in their business or within the scope of Hurley's employment. In their grounds of defense they further set out that Hurley, without their knowledge or consent, was on a mission of his own, in positive violation of his instructions.

Hurley was not represented by counsel in the trial court and made no defense to the charge against him. The jury returned a verdict against all of the defendants.

It is not now questioned that the collision was a result solely of the negligence of Hurley. The extent of Wheeling's injuries and the amount of his damages are not in issue. Hurley is not one of the petitioners here. The judgment as to him is final.

Our inquiry and the true test of the liability of the master in this case is not whether the act charged to the servant was done during the existence of the servant's employment, but whether it was within the course of the servant's employment or outside of it. *Kidd* v. *De Witt, Jr.,* 128 Va. 438, 105 S. E. 124; *Appalachian Power Co.* v. *Robertson,* 142 Va. 454, 129 S. E. 224; *Barnes* v. *Hampton,* 149 Va. 740, 141 S. E. 836; *Western Union Telegraph Co.* v. *Phelps,* 160 Va. 674, 169 S. E. 574.

The evidence, in the order of its presentation, was as follows:

First, the plaintiff and certain witnesses testified to the uncontroverted facts of the collision. Hurley was then called as an adverse witness. He testified that he had been employed regularly by the defendants for about three and one-half years. His principal duties were in the office; but frequently he was sent out by his company on trips to receive, deliver or check merchandise. At such times, he drove a motor vehicle belonging to the company. On May 19, 1938, he was directed by his employers to take their car, a two-door Dodge sedan, to proceed to Winston-Salem, North Carolina, and there to check in a shipment of hides. He left Lynchburg about one p. m., expecting to return that day. He followed the usual route through Chatham and Danville, arriving in  Winston-Salem between four-thirty and five p. m. He knew that his employers had issued specific instructions to their employees forbidding them, under any circumstances, to use the company's motor vehicles for personal business or to pick up passengers to ride in them, yet he had, contrary to orders, carried with him on his trip from Lynchburg, a friend, A. L. Marcotte, who had no business relationship with the defendants, and was not engaged in the discharge of any duty to them. Upon his arrival at Winston-Salem, he found that the buyer of the hides, having let his help off, could not take delivery, and that he, Hurley, would be unable to perform, that day, the task for which he had been sent. He thereupon called F. P. Kavanaugh by telephone and told him that he would not be able to check the hides until the next morning. He was instructed by Kavanaugh to spend the night in Winston-Salem, finish his work the next morning and then return to Lynchburg. He reported these facts to his friend, Marcotte. Marcotte replied that he had to be at work in Lynchburg early the next morning, and asked Hurley to take him to Danville, where he might be able to get a ride to Lynchburg. This Hurley did, and the trip to Danville was safely made. They waited there about fifteen minutes, while Marcotte attempted, without success, to get a ride to Lynchburg. Thereupon, Hurley undertook to carry him on to Chatham,

where a similar effort could be made. Shortly after they left Danville, the collision with the plaintiff's car occurred. He further said that the sole purpose of the trip on which he was engaged, at the time of the collision, was to get Marcotte back to Lynchburg; that he was then attending to no business for his employers; that his employers had no interest in the task of accommodating Marcotte; and that, during the entire time of his return trip, he was off duty, free to come and go as he personally pleased.

On re-direct examination, Hurley was asked if he did not make the statement, both at the scene of the accident and in the hospital, that he was going from Winston-Salem to Lynchburg; and if he did not, at a hearing on a charge of reckless driving before a trial justice, upon being questioned if he was on duty at the time of the accident, answer that he was. Hurley replied that he did not remember making the statements, and that he had not decided he would go to Lynchburg that night.

At this stage, the plaintiff then offered the following testimony to contradict Hurley:

A police officer said that when he questioned Hurley immediately after the collision, for the purpose of ascertaining the direction of travel of the two cars, Hurley told him he was going to Lynchburg. Another witness said Hurley told him, at the hospital on the same night, that he was on his way from Winston-Salem to Lynchburg and that, at the hearing before the trial justice, he heard him testify that he was on duty when the accident occurred.

The trial justice, C. R. Warren, said he had the impression that Hurley had stated at the hearing before him that he was on the business of the firm at the time of the accident. Judge Warren further said, however, that at the hearing he felt like counsel were "Thinking about a damage suit," and he tried to keep that out of his court, and told counsel that he wasn't interested in who Hurley was, whom he was working for, or anything of the kind; but simply wanted to know if he had been guilty of negligent driving or not. When confronted with the purported extract from

a stenographic report of the hearing, which recited that Hurley had merely said he had been to Winston-Salem on his employers' business and was returning to Lynchburg, the trial justice replied that he was not in a position to question the accuracy of the transcript and did not know whether he was right or wrong in the inference he had drawn. He added that he had tried to keep out of the hearing before him evidence which, while it might be relevant in a civil case, was not material in the criminal proceeding.

Hurley, being recalled to the stand by the defendants, positively denied that he had made a statement in court or elsewhere that he was on duty at the time of the accident.

Marcotte said that, being off from his work with Armour and Company, he casually saw Hurley in Lynchburg on May 19th; that, when he learned Hurley was going to Winston-Salem for the purpose of weighing in some hides, he asked to be permitted to ride with him, and permission being granted, he went solely for a pleasure trip. He then fully corroborated Hurley as to the details incident to their return trip towards Lynchburg that evening, adding that the trip was made at his request and for his sole purpose.

F. P. Kavanaugh testified that he and B. J. Kavanaugh are engaged in the rendering business in Lynchburg. In the operation of their business they use their own automobiles and trucks for transporting merchandise to and from their plant and for other services; and that all of the employees of his firm, including Hurley, had been specifically instructed not to permit others to ride in the company's vehicles or to use the cars for their own purposes. He corroborated Hurley as to the purpose of his trip to Winston-Salem and as to the orders given to him over the telephone to remain there for the night, check in the hides on the next morning and then return.

Plaintiff insists that the prior inconsistent statements alleged to Hurley, together with the *prima facie* presumption that the automobile was being operated in the business of its owners, were sufficient under the entire circumstances to present to a jury the question whether or not Hurley

was, at the time of the collision, a servant of the defendant acting within the scope of his employment.

■ For several reasons, the alleged prior inconsistent statements are without probative value. In the face of Hurley's admitted knowledge of and defiance of his instructions, any statement by him that a course of conduct contrary to such instructions was within the scope of his employment would be necessarily untrue, as a matter of fact and as a matter of law. Such statements, made as matters of fact or as opinions, could not extend the undisputed limit of the authority definitely prescribed by his employers.

A consideration of the statements in question show that it was true that Hurley was going towards Lynchburg, so far as direction was concerned. This was in accord with his declared purpose of accommodating Marcotte. The statement that he was "on duty" at the time of the accident does not go far enough to show whether it was intended to refer to a duty owing to his employers or merely to refer to the fact that he was operating the car at the time of the collision. The trial justice refused to permit the development of the evidence for the purpose of a civil action, and all of the circumstances and evidence attending the making of the statements are not before us. The statements of themselves are doubtful, inconclusive, and, at most, the interpretation put upon them by the plaintiff is but an inference or speculation. That inference is contrary to Hurley's full evidence and contrary to the undisputed instructions under which he was employed.

The prior statements were introduced for the purpose of contradicting Hurley. If made, they in no way contradicted the instructions which shaped the course of his employment. Whether Hurley ever made a statement that implied he was on duty for his employers at the time of the accident is a question relating to his credibility. There is no actual proof of the truth of the statement itself.

■ In Virginia, we have followed the rule adopted by the great weight of authority that in an action for injuries caused by the negligent operation of an automobile proof

that the automobile was owned by the defendant establishes a *prima facie* case that the automobile was being operated by the defendant or someone for him, under circumstances making him liable therefor. However, this is merely an inference or presumption that may be rebutted, with the burden of overcoming it resting upon the defendant. *Crowell* v. *Duncan*, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425; *Sydnor & Hundley* v. *Bonifant*, 158 Va. 703, 164 S. E. 403; *Barnes* v. *Hampton*, *supra*.

■ The presumption has been adopted by the courts as a reasonable rule because of the inconvenience, difficulty and, in a great many cases, the impossibility of otherwise proving by affirmative evidence that the driver of the vehicle was acting under the control and direction of the owner. Law of Automobiles (Michie) pages 400, 403; 42 A. L. R. 900; 96 A. L. R. 634.

■ This *prima facie* presumption, like other presumptions, cannot stand in the face of positive facts to the contrary. It is not based on an inference that is necessarily true because of the proof of certain facts. It is not necessarily true that an automobile is being used in the business of its owner because the facts show that it was owned by him and was being operated by one in his general employ. The proof of these facts creates an inference or presumption that it was so used, but they do not prove that it was actually in the owner's business. Therefore, if the presumption thus created is rebutted or overcome by substantial evidence showing the true facts to be to the contrary, the presumption disappears. Presumptions give way to ascertained or established facts.

■ "Presumptions are indulged in to supply the place of facts; they are never allowed against ascertained and established facts. When these appear presumptions disappear." *Schmitt* v. *Redd*, 151 Va. 333, 143 S. E. 884; *State ex rel. Steinbruegge* v. *Hostel et al.* (1938), 342 Mo. 341, 115 S. W. (2d) 802; *Lincoln* v. *French*, 105 U. S. 614, 617, 26 L. Ed. 1189.

In this case the *prima facie* presumption is overcome by evidence of the most positive character that Hurley was acting contrary to the terms and course of his employment. If we discard the evidence of Hurley as being discredited, and that, as we have seen, is as far as we can go, there remains the evidence of two witnesses, Kavanaugh and Marcotte, in absolute contradiction of the truth of the presumption. There is not the slightest contradiction of defendants' instructions to their employees, of Hurley's complete knowledge of such instructions, or of the specific instructions to Hurley in the telephone call of May 19th, or any contradiction of Marcotte as to the reason for the night trip from Winston-Salem. This evidence is entirely credible, and if it is true, and in the absence of contradiction it must be accepted as true, then the course of action adopted by Hurley, contrary to his instructions, was without the scope of his employment. The presumption created in favor of the plaintiff, therefore, fails because the positive facts in question created a different situation from that upon which the presumption was based. That which was supposed to be true by presumption or inference has been proven to be without foundation.

A number of cases from this State and other jurisdictions are cited by plaintiff to support his contention that the evidence presented a question of fact. We think that an examination of those cases will disclose, in every instance, certain peculiar facts and circumstances aiding and supporting the *prima facie* presumption arising from the ownership of the car, thereby raising a question of fact as to whether the vehicle was actually being used in the owner's business.

The case of *Crowell* v. *Duncan, supra,* offers no parallel to this case in point of fact. There the servant, in an intoxicated condition, was in charge of a taxi-cab, with the taxi-cab sign displayed, during business hours. The cab had been turned over to the servant, the owner's son, with authority to transact such business as he could and make return to the employer. It was being operated as is usual

in such business. This court held that the circumstances of his employment raised a question of fact for the jury.

In *Sydnor & Hundley* v. *Bonifant, supra,* there were contradictions of the driver's testimony sufficient, perhaps, to justify a jury in discarding his evidence, and, in addition, there were the acts and conduct of the officers of the defendant corporation tending to show an admission of liability on its part for the injuries suffered by the plaintiff. Here there was no such conduct nor acts on the part of the owners.

In *Buchanan* v. *Wilson,* 159 Va. 49, 165 S. E. 422, it was held that a statement of the driver that he worked for the owner of the car might be considered as an admission of agency. The employment of the driver was there in question. Here the question is whether the agent was acting within the scope of his employment.

The present case differs, in point of issue and facts, from *Ryan* v. *Maryland Casualty Co.,* 173 Va. 57, 3 S. E. (2d) 416. That case concerned the authority of the defendant's son to drive a car, which authority the defendant and his son denied. The plaintiff impeached the testimony of the father, the owner of the car, by two persons who testified that the father had stated to them that he had given his son permission to drive the automobile. It was held that the evidence of the two witnesses and certain additional circumstances constituted circumstantial evidence, which entitled the jury to pass upon the credibility of the witnesses.

Here the question is whether an employee, authorized to drive a car in the business of his employers, went beyond the scope of his employment in the use of the car. There is no contradiction of the evidence of either the employers or the driver that the latter used the car without the consent of the former for a purpose directly contrary to the specific instructions of his employers.

The facts of the instant case are almost identical with those in *Kidd* v. *De Witt, Jr., supra,* with the sole exception of the alleged prior statements of Hurley, which, for the reasons given, we do not think constitute a variance.

There a chauffeur, at the direction of the master, carried another employee to her home in Amherst, with instructions to bring her back to Lynchburg when her visit was completed. The chauffeur carried that person to the point designated in Amherst county. He then proceeded on a trip or joy ride of his own. While on this trip, he picked up a friend, started back to Lynchburg and had a collision with another car. The fact that the unauthorized trip of the chauffeur took him along the same route that he would have followed in the later discharge of his master's business in returning the other employee to Lynchburg was not material in that case. The simple fact that Hurley, in the instant case, on an unauthorized trip, was on the usual road of return towards Lynchburg is no more material here. In both cases the facts relative to the scope of the employment were undisputed.

The facts in this case bring its determination squarely within the principle quoted with approval by Mr. Justice Gregory in *Western Union Telegraph Co.* v. *Phelps, supra,* and by Prentis, P., in *Appalachian Power Co.* v. *Robertson, supra:*

" 'A master is not liable for every wrong which the servant may commit during the continuance of the employment. The liability can only occur when that which is done is within the real or apparent scope of the master's business. Beyond the scope of his employment the servant is as much a stranger to his master as any third person. The master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment. And, in determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act be done while the servant is at liberty from the service, and pursuing his own ends exclusively, the master is not responsible. If the servant was, at the time when the injury was inflicted, acting for himself, and as his own master, *pro tempore,* the master is not liable. If the servant

steps aside .from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all the authorities.' " *Morier* v. *St. Paul, M. & M. Ry. Co.,* 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793.

The uncontradicted facts here show that the master sent his servant, in charge of an automobile, to a distant point to perform a specific duty. The servant, in direct violation of his instructions, stepped aside from his masters' business, negligently engaged in an act not connected with such business and placed himself in a position where he could not and did not perform the duty to his masters, which was the sole purpose for which he was then employed. The act was done while the servant was at liberty from his service, acting for himself and pursuing his own ends. There was ·not merely a deviation, but a total departure from the course of the masters' business. A servant cannot make such a deviation, contrary to the admitted terms and scope of his employment, a part of the course of his employment. If that were not true, the servant would determine the scope of his employment rather than the employer.

There was no conflict in the evidence that Hurley was acting beyond the scope of his employment at the time his negligence resulted in an injury to the plaintiff. There was then no question for the jury. The trial court should have sustained the motion to strike the evidence made at the conclusion of all the evidence.

For the foregoing reasons the judgment of the trial court is reversed, the verdict of the jury set aside, and a final judgment will be entered here for the original defendants, B. J. Kavanaugh and F. P. Kavanaugh, trading as the Lynchburg Rendering Company.

*Reversed and final judgment.*