# Richmond

ALFRED MCNEILL AND S. H. MCNEILL V. HENRY
M. SPINDLER, ET AL.

November 27, 1950.

Record No. 3710.

Present, Gregory, Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*W. I. Moncure* and *W. P. Bagwell, Jr.*, for the plaintiffs in error.

*W. Moncure Gravatt* and *W. M. Gravatt, Jr.*, for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

Alfred McNeill, driving the automobile of his father, S. H. McNeill, was injured in a collision with a truck driven by Earl Wynn and owned by the Spindlers, trading as Blackstone Milling Company. Alfred recovered a verdict against Wynn and the Spindlers for his injuries and his father recovered a verdict against them for damages to his car, their separate actions being tried together.

The plaintiffs sought to hold the Spindlers on the ground that they negligently entrusted their truck to an incompetent driver, Wynn; and on the further ground that he was their agent in the scope of his employment when the accident happened.

At the conclusion of the evidence the court sustained the motion of the Spindlers to strike the evidence on the question of agency, but overruled it on the question of incompetent driver and submitted that issue to the jury. After the verdicts, however, the court concluded that the evidence on the issue of incompetency was not sufficient to support the verdicts and thereupon set them aside as to the Spindlers, and entered judgment in their favor. The verdicts against Wynn were approved and judgment was entered thereon against him. He did not appeal and his negligence as the cause of the accident is treated as established.

The assignments of error present, first, the question of whether the evidence was sufficient to support the verdicts on the ground that Wynn was an unfit driver, and the Spindlers were negligent in permitting him to use their truck. The circumstances in connection with his having the truck will be stated later on. The factual issue involves the extent of his use of intoxicants and what the Spindlers knew about it.

The evidence establishes that Wynn was under the influence of intoxicants at the time of the accident. He was cross-examined by the plaintiffs as an adverse witness and

testified that he had drunk three or four bottles of beer shortly before the accident and took a drink of whiskey when he got home after the accident; that he drank the beer at the Acme Barbecue, where he had previously been "quite a few" times drinking beer; that he drank it "most any time" he could get it, and drank whiskey "most any time" he could get it, too. He said both Spindlers knew he drank and he had taken a drink with both of them in their kitchen; that he would take one any time he could get it, but he had never been drunk and did not drink that much.

Plaintiffs introduced three other witnesses on this subject. The first, a delivery boy in a drugstore, said he had known Wynn all his life; that he had not seen him drinking lately; that he had heard him say he drinks, but he did not know it himself. He was asked, "Does he have a reputation for drinking?" and his reply was, "I don't know about that."

The second witness, a service station operator who had known Wynn about six years, said he had seen him when he thought he had a drink, but that he had no reputation for being a drinking man, other than he would take a drink when he could get it.

The third witness was a merchant and a justice of the peace who had known Wynn 15 or 20 years. He was asked whether Wynn was a drinking man. He replied, "I don't know. That could take in right much territory. I think he will take a drink all right. I think probably I have seen him with beer or something on his breath, but I have never seen him drink." He was asked whether he had that reputation and he said, "I don't think so."

For the defendants, the Spindlers, who are father and son, testified that Wynn had worked for them about nine years as a general handyman and truck driver and had been employed before that by their predecessor; that it had never come to their knowledge prior to the accident that Wynn had ever been under the influence of intoxicants or

drunk at any time, either on or off duty; that they had found him truthful and trustworthy. The elder Spindler testified that he had on one occasion given him a drink at Spindler's house, but he did not know he drank to amount to anything; that he knew Wynn would take a drink maybe nine years ago when he started working for him, but none of the many customers that Wynn had waited on had ever said anything against him and he had no reason to inquire into his drinking habits.

The younger Spindler testified he had given Wynn a drink of liquor and, therefore, knew he would drink.

Another witness for the defendants, a former partner of the elder Spindler's in the milling business, testified that Wynn was an employee of that business and he had known him all his life; that this accident was the first time he had ever heard anything wrong about him and that he regarded him as a trustworthy person, qualified to operate a truck; that he had confidence in him and Wynn had given perfect service when he had worked for him. Another witness, a dairyman and former mail carrier, had known Wynn for 20 years and had never heard anything against him; he had never known of his being drunk and had never seen him under the influence of liquor in his life. Another witness had known him for seven or eight years, had been to the defendants' mill many times and Wynn had waited on him; he had never heard anything against him. C. F. Epps, a merchant, was formerly in the milling business and had employed Wynn, whom he had known since 1931 or 1932. He said he had never seen him take a drink or smelled whiskey on him; that as far as he knew his record was excellent and he did not know a better boy; that he would give him a job tomorrow and trust him with his truck.

The test of liability under the doctrine of entrustment is whether the owner knew, or had reasonable cause to know, that he was entrusting his motor vehicle to an unfit driver likely to cause injury to others. In the case of intoxication, there must be knowledge, or imputable knowl-

edge, that the person to whom the vehicle is entrusted is addicted to the use of intoxicants, or has the habit of drinking. The owner must know, or be chargeable with knowledge, that the driver's habits are such that he is likely to drive while he is intoxicated. *Crowell* v. *Duncan*, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425; *McIlroy* v. *Akers Motor Lines*, 229 N. C. 509, 50 S. E. (2d) 530; *Williamson* v. *Eclipse Motor Lines*, 145 Ohio St. 467, 62 N. E. (2d) 339, 168 A. L. R. 1356, and Anno. 1364 at p. 1375; *Mitchell* v. *Churches*, 119 Wash. 547, 206 P. 6, 36 A. L. R. 1132, and Anno. 1137 at p. 1148; 60 C. J. S., Motor Vehicles, sec. 431b, p. 1062.

■ Measured by this test we conclude that the evidence in this case is not sufficient to cast liability upon the truck owners. Certainly they did not know that Wynn was an unfit driver. He had been driving for them for nine years and had never had an accident. He was once involved in an accident but he was not driving and he was not drinking. No one had ever seen him driving while intoxicated and no one had ever charged him with doing that. There is no evidence that he had a reputation of being a drinking man or addicted to liquor. The plaintiffs' witnesses themselves testified to the contrary. Defendants knew he would take a drink and had given him one themselves. He testified on cross-examination that he would take one any time he could get it, but that expression, frequently heard, indicates a willingness rather than a practice, and it is too vague to convict him of being addicted to the habit.

■ Liability of a motor vehicle owner ought not to result from mere knowledge that his driver would take a drink. If only teetotalers could be employed, many vehicles would probably stand idle. Liability in such cases results only from negligence, and negligence arises from acts or omissions likely to produce injury. On the record here we find no evidence sufficient to support the theory that the defendants knew or ought to have known that when

they permitted Wynn to drive their truck he was likely to drive it while intoxicated. It had never happened in the nine years of his employment and there was not enough to charge them with knowledge that it was likely to happen on this occasion.

In *Crowell* v. *Duncan, supra,* a father was held liable for injuries caused by his son while driving an automobile which the father had entrusted to him to use at will, in the face of knowledge, actual or imputable, that the son was very intemperate and in the habit of getting under the influence of intoxicants. The accident that happened there was one which the evidence showed the father ought to have known was likely to happen. See comments on that evidence in *Flanagan* v. *Kellam,* 187 Va. 754, 757, 48 S. E. (2d) 69, 70.

*McIlroy* v. *Akers Motor Lines, supra,* on facts similar to those here, but even less favorable to the defendant, held that the owner was not liable. The driver there had worked for the defendant for eight months prior to the accident and there was no evidence of his unfitness during that period. The court said that the evidence was not such as to show that the injury complained of was probable or likely to occur, or could reasonably have been foreseen when the truck was entrusted to the driver for a temporary, specific purpose. Here the employment had been for nine years; the truck was entrusted to Wynn for the specific purpose of taking a bag of flour to his home and driving the truck back. His past record did not indicate that the accident which happened, as described below, should reasonably have been foreseen.

Plaintiffs rely strongly on *Crockett* v. *United States,* 4 Cir., 116 F. (2d) 646. In that case liability was rested primarily on agency, and the doctrine of entrustment seems to have been involved only incidentally. It was there said that from the readiness of the driver to engage in a drunken carousal so early in the morning he must have been a man of inebriate habits, and that the employer either

knew or should have known that fact. Judge Dobie, in a vigorous dissent, stated that the record contained no evidence that the employer knew or should have known of the driver's addiction to drink. The facts of that case do not make it persuasive authority in this instance.

The other main assignment of error challenges the ruling of the court that the evidence did not present a jury question on the issue of agency. This was the case made by the testimony on that point:

The accident happened around nine o'clock on a Saturday night about one-half mile northeast of the corporate limits of the town of Blackstone, on Route 460 toward Petersburg. Wynn was driving the truck toward Blackstone and McNeill was driving toward Petersburg when the collision happened. Wynn lived in Blackstone in the southeastern part of the town. About five o'clock that afternoon, at the close of his working hours, he asked H. M. Spindler to lend him the truck to take home a bag of flour he had bought at the mill. Spindler consented, but told him not to drive it anywhere else, to bring it back to Spindler's house, which was in the central part of town. Two witnesses who were present testified to hearing that conversation. One of them said that Spindler told Wynn the second time not to drive the truck anywhere but to bring it back to him, that there was "too devilish much drinking," or "too devilish many drunks," he didn't remember which he said.

Some time after he had taken the flour to his home, Wynn started with the truck down to the former home of his wife, who had been sick, to see if he could get one of her brothers to take her to the hospital. On the way he stopped at the Acme Barbeque, which his evidence indicates was about a mile and a half outside of Blackstone, toward Petersburg. It was there he drank the beer and when somebody told him the brother-in-law he was looking for had gone, he turned around and started back to Blackstone. He said he was going to take the truck back to Mr. Spindler but after

he had the accident he was nervous and went on to his own home.

The doctrine of *respondeat superior* rests upon the relation of master and servant. A plaintiff seeking recovery from the master for injuries must establish that the relationship existed at the time of the injuries, and also that the servant was then about his master's business and acting within the scope of his employment. *Kidd* v. *DeWitt*, 128 Va. 438, 443, 105 S. E. 124, 125; *Master Auto Service Corp.* v. *Bowden*, 179 Va. 507, 510, 19 S. E. (2d) 679, 680.

Defendants admitted that they owned the truck and that Wynn was employed by them. There was, therefore, a rebuttable presumption that at the time of the accident the truck was being driven in their service; but this presumption disappears in the face of positive facts to the contrary. *Sydnor & Hundley* v. *Bonifant*, 158 Va. 703, 707, 164 S. E. 403, 404; *Kavanaugh* v. *Wheeling*, 175 Va. 105, 7 S. E. (2d) 125.

There is wide room for the contention of the defendants that the relationship of master and servant did not exist when the accident happened; that the evidence is that it was after business hours, and Wynn's duties were over, when he borrowed the truck to take his flour home, and that in the performance of that act he was serving himself and not the defendants. But plaintiffs argue that it was the custom of defendants to make deliveries of articles purchased from them; that Wynn was a customer, and hence he was about the business of the Spindlers in delivering the flour. If it be conceded that that was a question for the jury, it is still true that the accident occurred not in the performance of that mission, but in the course of an enterprise in which Wynn was pursuing his own ends, and not engaged in the business of the defendants.

A master is not liable for every wrong which a servant may commit during the continuance of an employment. The master is responsible only when it can be said that the servant was in the course of his employment when the

injury was done. If the servant steps aside from his master's business and is engaged in an independent venture of his own, the relation of master and servant is for the time suspended. The test is whether the act complained of was done in the course of the servant's employment, or outside of it. *Appalachian Power Co.* v. *Robertson,* 142 Va. 454, 129 S. E. 224; *Western Union Tel. Co.* v. *Phelps,* 160 Va. 674, 169 S. E. 574; *Bivens* v. *Manhattan for Hire Car Corp.,* 156 Va. 483, 159 S. E. 395; *Kavanaugh* v. *Wheeling, supra.*

When the relationship of master and servant has been established, the burden is on the master to prove that the servant was not acting within the scope of his employment when he committed the tort, and if the evidence leaves that question in doubt, it is to be determined by the jury. *Crowell* v. *Duncan, supra; Bivens* v. *Manhattan for Hire Car Corp., supra.*

If the deviation from the master's business is slight on the one hand, or marked and unusual on the other, the issue is for the court. Where the facts place the case between those two extremes, the question is for the jury. *Drake* v. *Norfolk Steam Laundry Corp.,* 135 Va. 354, 116 S. E. 668; *Master Auto Service Corp.* v. *Bowden, supra.*

There is no conflict in the evidence here that Wynn took the truck to perform a specific errand, with specific directions where to return it. Both of those points were within the town of Blackstone. There is also no conflict in the evidence that Wynn disobeyed those instructions and drove the truck away from the town for a purpose of his own. The fact, if it be a fact, that he was returning the truck to its owner when the accident happened does not change the result. "He was no more engaged in his master's business while returning to, than while departing from, his zone of duty." *Master Auto Service Corp.* v. *Bowden, supra,* 179 Va. at p. 513, 19 S. E. (2d) at p. 681.

There was more than a marked deviation here. There was a complete stepping aside from the defendants' business to carry out a personal or family matter of Wynn's own,

in no wise related to the defendants' affairs and completely contrary to Wynn's instructions. Our own cases, some of which are cited above, and most others, hold that on such facts the master is not liable. 60 C. J. S., Motor Vehicles, sec. 437c, p. 1098, and annotations 45 A. L. R. 477, 80 A. L. R. 725.

This case is readily distinguished from *Crowell* v. *Duncan*, *supra*, and *Drake* v. *Norfolk Steam Laundry Corp.*, *supra*, relied on by plaintiffs. Here, unlike those cases, the driver did not have discretion in the use of the vehicle turned over to him; nor was he combining his business or pleasure with the business of the master when the accident happened; nor was he then on an errand which began and was to end in the service of the master.

The inference of authority to use the truck for such a venture as Wynn was on, sought to be drawn by the plaintiffs from the evidence that on former occasions Wynn had been allowed to take the truck home when he came back late from delivering goods, and that the Spindlers knew that on one or two of such occasions Wynn had driven the truck contrary to orders, is not sufficient to establish agency, whatever might be its effect on the question of implied permission under the statute. Code, 1950, sec. 38-238. *State Farm Mut. Automobile Ins. Co.* v. *Cook*, 186 Va. 658, 43 S. E. (2d) 863, 5 A. L. R. (2d) 594.

The judgment below is

*Affirmed.*