## Staunton.

MARYLAND CASUALTY COMPANY, A CORPORATION, V.
WILLIAM CECIL HOGE, AN INFANT, BY NANCY S.
HOGE, HIS MOTHER AND NEXT FRIEND.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*Sinnott, May & Leaman* and *Willis, Adams & Hunter*, for the plaintiff in error.

*Woodrum, McCauley & Parsons*, for the defendant in error.

CHICHESTER, J., delivered the opinion of the court.

This is an action in which William Cecil Hoge, an infant, recovered a judgment in the Court of Law and Chancery of the city of Roanoke against the Maryland Casualty Company in the sum of $10,000.00, and the correctness of the judgment of the trial court is before us for review upon a writ of error duly awarded the insurance company. The action is based upon the following facts which are practically undisputed,. there being very little conflict indeed, in any of the evidence adduced at the trial.

On the 7th day of July, 1927, the Maryland Casualty Company issued a certain liability policy to one, R. L. Norwood, of Roanoke, Virginia, covering a Chevrolet coach which is fully described in the policy. The record shows that Mrs. Catherine Norwood, an adult, wife of R. L. Norwood, occupied the home with her husband in Roanoke, Virginia. It also discloses that she was in the habit, by and with the consent and approval of R. L. Norwood, of driving the Chevrolet coach whenever and wherever she pleased. Indeed it appears that the car was bought for her special use and that R. L. Norwood, in addition to the Chevrolet coach, owned a Nash car which he kept for his own use.

On the 14th day of September, 1927, Catherine Norwood invited Wm. Cecil Hoge, an infant, the defendant in error, to accompany her as a guest in the Chevrolet car above referred to. During the course of the drive, which was confined to the city of Roanoke, there was a collision between the automobile operated by Catherine Norwood and one of the electric cars of the Roanoke Railway and Electric Company. Wm. Cecil Hoge was seriously injured in the collision, and acting through his mother and next friend instituted

an action for damages against R. L. Norwood, Catherine Norwood, his wife, and the Roanoke Railway and Electric Company. In this action he recovered a judgment of $10,000.00 against Catherine Norwood alone. This judgment became final and execution issued thereon which was returned: "No effects." Wm. Cecil Hoge, through his mother as next friend, then instituted the present action against the Maryland Casualty Company for recovery of the amount of the policy issued to R. L. Norwood. The verdict and judgment were against the insurance company and the judgment entered therein by the trial court is before us for review upon this writ of error.

There are ten assignments of error, eight of which get such vitality as they have from the two main assignments—

1. Whether or not Catherine Norwood had the consent of the owner, R. L. Norwood, to drive the car, as is required by the policy.

2. That at the time of the accident the use and operation of the automobile by her were unlawful.

These assignments will be discussed, with their relation to others as we proceed.

The contentions of the defendant in error are that under Clause B, section 11 thereof (marginal note 1 page 215 *post*) of the policy, the insurance provided is available to the defendant in error, William Cecil Hoge, who was the guest passenger in the automobile at the time of the accident referred to;

That Catherine Norwood, the adult wife of R. L. Norwood, living in his home at the time, and as such, "an adult member of the named assured's household" was covered by the provisions of the policy if she was operating the automobile, even without the specific consent of the assured.

But it is further contended that Catherine Norwood had the specific permission of R. L. Norwood to use and operate the automobile upon the occasion of the happening of the accident.

On the other hand it is contended by the plaintiff in error—

That at the time of the accident Catherine Norwood was operating the automobile without the consent of R. L. Norwood, the named assured in the policy, and hence that she was not covered by the policy and that at the time of the accident the use and operation of the automobile by her was unlawful.

It will thus be seen that the case rests upon the clear cut issues—

First—As to whether Catherine Norwood was driving the car without the consent and permission of the assured, and

Second—Whether she was driving the car unlawfully in that sense of unlawfulness which would destroy her alleged right to recover under the policy. It is clear, of course, that the defendant in error cannot recover against the insurance company, unless it is liable to Mrs. Catherine Norwood under the policy.

The trial court adopted the theory of the defendant in error, that Catherine Norwood had permission to drive the car, and that her failure to secure a permit from the chief of police of the city of Roanoke to operate the car was not admissible in evidence, and that the failure to secure the permit had no bearing upon the right of the defendant in error to recover.

If the trial court was right in its views the objection to the instruction given by the court for the defendant in error, the objection to the court's action in refusing to give certain instructions asked for by the

plaintiff in error and the exclusion and admission of certain evidence complained of by the plaintiff in error, all of which form bases for the bills of exception and are predicated upon the theory of plaintiff in error of the case, then the case has been correctly decided and the judgment should be affirmed. The court's action we think in giving one instruction (marginal note 2 page 215, *post*) was based upon undisputed evidence in the case. There was no defense presented by any evidence to the contrary and therefore it was the duty of the court to instruct the jury upon these undisputed facts and not to theorize as to what the law would be if the facts had been different.

We will, therefore, discuss the two main points above referred to, namely, as to whether Catherine Norwood had the consent of the assured as a matter of law to use the car and whether the exclusion of the evidence by the court that she had failed to secure a permit to drive the car was error. A right conclusion upon these points will dispose of the other various assignments of error.

It appears that Catherine Norwood had been in the habit of driving this car for her own pleasure and convenience with the knowledge and consent of her husband. Indeed, as heretofore stated, the car was purchased for her use. Clearly if this be true and there was no revocation of permission of the husband to use the car, this consent was a continuing thing, and the insurance company cannot now claim she was driving the car without authority. It is perfectly clear from the testimony of R. L. Norwood that his wife had his permission and consent to use the car and that his direction that she take the car home was only a precautionary one under the circumstances and conditions as they existed at that particular time and that there

was no intention to revoke any general authority his wife had, which was full and complete, to operate the car.

We deem it proper here to set out the testimony of the assured upon the question of the right of Catherine Norwood to use and operate the car in question:

"Q. Mr. Norwood, this Chevrolet car—-you had a Nash car that you drove yourself?

"A. Yes, sir.

"Q. This Chevrolet car was purchased for Mrs. Norwood's use?

"A. Yes, sir.

"Q. That is the reason you had it? That was the principal purpose?

"A. Yes, sir.

"Q. She at all times had permission to use the car?

"A. Yes, sir.

"Q. And this day she had permission to use the car?

"A. Yes, sir.

"Q. The only instruction you gave her was that on account of the storm coming up you didn't want her to drive the car?

"A. Yes, sir.

"Q. But as soon as the storm blew over you didn't have any objection?

"A. That is as far as I went with her.

"Q. Then it was not that you did not want her to drive the car, it was simply that you wanted her to stay home for her own particular benefit and on her account?

"A. Yes, sir.

"Q. So far as the use of the car was concerned, you didn't have any objection to her using the car, but you had the car for her specific use at all times. Is that true?

"A. Yes, sir.

"Q. You simply thought that on account of her condition and the impending weather, that it might be dangerous for her to be driving during a storm?

"A. Yes, sir.

"Q. And it was bright and sunshiny at six o'clock in the evening on the day the accident happened?

"A. Yes, sir:

"Q. And at the time this accident happened you had no objection to her driving the car at that time, did you?

"A. I could not have none because I told her it was on account of the storm and I knew her condition— she was kinda nervous, and I did not see her from the time she left me down town until after the accident.

"Q. As soon as the storm was over you had no objection to her driving the car?

"A. No, sir; that is, if she was feeling well.

"Q. That was up to her entirely?

"A. Yes, sir.

"Q. This storm had passed over about three hours before the accident?

"A. Well, I don't think it lasted but about an hour."

We are referred to a number of cases in the petition for a writ of error, and in the brief bearing on the question of the consent of the owner under policies similar to the one now under consideration. *Dickinson* v. *Maryland Casualty Company*, 101 Conn. 369, 125 Atl. 866, 869, 41 A. L. R. 500, presents quite a similar situation so far as the facts are concerned.

In the above case, the Maryland Casualty Company, the appellant in the present case, issued a liability policy identical in language with the policy issued to Norwood, to one Donato Maisano, the owner of a Wescott automobile. Louis Maisano, a brother of

Donato, and an adult member of his household, gave permission to one Riccitelli to use the Wescott automobile to "go home and change his clothes." Riccitelli took the car and instead of going home to change his clothes, went off on a joy ride, and one Dickinson, an invited guest in the car during the ride, received injuries in an accident which resulted in his death. Judgment was obtained against Riccitelli, and he brought suit against the Maryland Casualty Company claiming that it had indemnified Riccitelli, who was driving the car of the insured.

The company defended upon the ground that Riccitelli was not driving the car with the consent of the insured; that the consent given was to use the car to "go home and change his clothes" and that he had deviated from the permission, and, therefore, the accident was not covered by the policy. The court, after full discussion of a reasonable construction of this provision in the policy, held that the permission to use the car contemplated in the policy was a general permission, and that it was not necessary to show that the car at the time of the accident was being driven with the specific permission of the insured that it be used for that particular occasion and purpose.

The court said: "Construing this provision in the light of these settled rules of construction, we must adopt, between the two claimed constructions, that which is most favorable to the insured, the decedent. In the presence of a reasonable doubt we must resolve it in favor of the insured. Between two interpretations we are required by the rules of legal construction to adopt that which will sustain his claim. Applying these rules of construction, the plaintiff must prevail. But we reach the same result without the aid of the rules of construction. Let us seek the reasonable

construction to put upon this language. The insurer desired to obtain insurance, and for this object it extended in its policy the benefits of the policy to the guest riding in the insured's automobile, providing the guest was riding with the permission of the insured. If the insurer had intended by this proviso to restrict the permission to its specifically named objects, it would, in each case, be necessary to make inquiry into the purpose and extent of the permission, while by specific provision the insurer could readily have done this and avoided the inquiry. The result would have been a policy less acceptable to prospective insured. It would have invited in most cases an investigation as to whether the permission granted had been violated in a particular case or not. In place of a certain provision in the policy of definite meaning it would have inserted a provision breeding uncertainty, inviting litigation, and making the defense of a departure from the permission an available and often used defense. This is exactly what the courts and legislature have frowned upon—uncertain and ambiguous provisions in contracts of insurance under which insurers seek an escape from the obligation of paying the insurance indemnity contracted for.

"The fact that the insurer in this case did not so restrict the term 'permission' is strong evidence that it did not by this provision intend this; to justify the strict construction claimed by the insurer, the terms of the policy prepared by the defendant ought to specifically so provide. The construction claimed by the defendant would convert all cases of this character into a contest as to the exact words spoken when permission was secured, and to an attempt upon the trial by refinement to convert any use of the car into a departure sufficient to annul the permission granted.

If the departure were from the place permitted, be it near or far, or from the purpose named, be it substantial or otherwise, the insured must fail in his recovery. The business of the insurance company was to sell its insurance under this policy. Indemnity for the guest or family of the assured riding in the car was a feature of the policy. What sort of an indemnity to them would it be if they were bound by the strict limitations of the permission of the insured? It would be necessary in advance of entering the car for them to ascertain these limitations and then to endeavor to see that the driver of the car enforced them. Is it likely that the insurer would insert such a provision leading to such consequences? And how could the insured ever be assured that he had secured the extension of the indemnity of this policy for his guest or family or the guest or family of him to whom the insured gave the permission, if any departure from that permission destroyed the indemnity? The purported object of this policy was to indemnify this guest. No construction of this policy should be permitted, in the absence of plain language to that end. which would destroy the guest's claim to indemnity, which was one of the objects of this policy. A defense of that character by an insurer is not favored in law."

The substance of the above decision is that the permission contemplated in the policy, means a permission to use the car generally, and not a permission to use the car in a specified manner and for a specified purpose.

The defendant in error contends that the plaintiff in error is estopped from now raising a question as to the right of Mrs. Norwood to drive the car, because of her alleged failure to have the permit, or because of the alleged failure to have the specific consent of her

husband. In other words, it is contended that the company cannot now raise the question as to whether the policy covered Mrs. Norwood. We do not deem it necessary to discuss this particular feature of the case because we think it has been determined by the facts and law heretofore referred to. However, the case of *Fullerton* v. *U. S. Casualty Company*, 184 Iowa 219, 167 N. W. 700, 6 A. L. R. 367, seems to support this contention as does *Sanders* v. *Frankfort Insurance Company*, 72 N. H. 485, 57 A. 655, 101 A. St. Rep. 688.

We think the court was right under the facts above narrated, which have not been disputed, in limiting the jury in consideration of these facts in its instruction, which correctly propounded the law.

██ It is contended by the plaintiff in error that the company is released from liability under the policy because the operation thereof by Catherine Norwood was unlawful within the meaning of Clause B, section II. (See marginal note 1.) The unlawful operation is said to consist of the failure of Catherine Norwood to

1. "The insurance provided by this policy is hereby made available, in the same manner and under the same conditions as it is available to the named assured, to any person operating, and/or to any other person while riding in, and/or to any other person, firm or corporation legally responsible for the operation of, any of the automobiles described in the statements, provided the use and operation thereof are lawful and with the permission of the named assured, or, if the named assured be an individual, with the permission of an adult member of the named assured's household other than a chauffeur or a domestic servant, except that this extension of coverage shall not be operative if this policy be issued to any public automobile-garage, automobile repair-shop or automobile sales-agency; nor shall insurance under this insuring agreement be available to any such garage, repair-shop or sales-agency, nor to the proprietors, employees or agents thereof; provided further, insurance payable under this policy shall be applied by the company first to the protection of the named assured, and the remainder, if any, to the protection of others entitled to insurance under the provisions and conditions of this insurance agreement as the named assured shall in writting direct.

2. "The court instructs the jury that if you believe that the plaintiff has shown by a preponderance of the evidence in this case that the defendant, the Maryland Casualty Company on the 8th day of July, 1927, issued to R. L. Norwood a certain policy of liability insurance introduced in evidence in this case, and that on or about the 14th day of September, 1927, Catherine

comply with an ordinance of the city of Roanoke with reference to securing a driver's permit. The court refused to permit testimony to the effect that Catherine Norwood had failed to secure a permit to operate a car in the city of Roanoke. The plaintiff in error excepted to the action of the court in excluding this evidence. While we doubt whether the question is properly before this court for reasons that the record discloses, set out in the brief of the plaintiff in error, however, if the exceptions had been properly preserved they could not avail the plaintiff in error upon the facts presented by this record. The language of the policy Clause B, section II, referring to the automobile is— "provided the use and operation thereof are lawful." We do not think this failure to comply with a traffic regulation, which in no way affected or contributed to the accident, would relieve the company of all liability. Mrs. Norwood is shown by the record to be a perfectly competent driver, her husband testified:

"Q.   Did she drive this car every day practically?

"A.   This Chevrolet?

---

Norwood, the wife of the said R. L. Norwood, an adult member of his household, was driving the Chevrolet coach mentioned and described in the said policy of insurance, and that it was the habit and custom of the said Catherine Norwood, with the knowledge and permission of her husband to drive the said Chevrolet coach in and upon the streets of the city of Roanoke whenever and wherever she pleased, and while so driving and operating the said Chevrolet coach or while driving said car with the permission of an adult member of the household of the said R. L. Norwood, other than a chauffeur or domestic servant, on the streets of Roanoke on the 14th day of September, 1927, that there was a collision between the said automobile, being so driven and operated as aforesaid, and one of the street cars of the Roanoke Railway and Electric Company, and as a result of said collision the plaintiff, William Cecil Hoge, received certain injuries for which in a subsequent suit prosecuted to final judgment in the Law and Chancery Court of Roanoke, there was awarded as compensation for said injuries the sum of $10,000.00, which said judgment was against said Catherine Norwood, and that the said judgment has become final, and is an existing judgment against the said Catherine Norwood, and that an execution upon the same has been returned marked "no effects," then you are instructed to find for the plaintiff in this case, in the sum of $10,000.00, with interest on this amount from March 28, 1928, and $44.21 costs in the case of *William Cecil Hoge, by etc.*, v. *Catherine Norwood, et al.*"

"Q. Yes, sir.

"A. Oh, yes.

"Q. She is a good capable driver, isn't she?

"A. Yes, sir; she has been driving for, I am sure, eight years."

The ordinance of the city of Roanoke requiring a driver's permit is purely local in character. It has no application outside the corporate limits of the city. Had the accident occurred beyond the corporate limits of the city under exactly the same circumstances, of course, the ordinance would have had no application whatever.

We have examined the cases to which the plaintiff in error has referred us. *Flannagan* v. *Provident Life, etc.* (C. C. A.) 22 Fed. (2nd ed.), page 136; *Standard Auto Insurance Ass'n.* v. *Neal*, 199 Ky. 699, 251 S. W. 966, 35 A. L. R. 1468. In practically all the cases referred to the prohibition was against particular persons or the *accident* grew out of the failure to observe the law, neither of which elements enter into the case we are here considering.

The authorities seem to be quite unanimous in holding that failure to observe traffic regulation is no defense unless such failure was the proximate cause of the injury. The following authorities sustain this proposition.

In the case of *McMahon* v. *Pearlman*, 242 Mass. 367, 136 N. E. 154, 23 A. L. R. 1467, it was held that one operating an automobile on a public highway without a license, which act is a statutory crime, is not precluded by public policy from enforcing a policy indemnifying him against bodily injury inflicted by use of the automobile.

The policy in the above case expressly exempted the insurer from liability for injury or death caused by the

automobile while being operated by any person in violation of the law with reference to age, and if there was no legal age limit, by any one under the age of sixteen, or while engaged in any racing or competitive speed test. The accident happened while the insured was driving her car, she having no legal permit or authority to drive the same. The insurer claimed that while the act was not specifically forbidden in the policy, yet, the insured was violating the law, and, therefore, for reasons of public policy, the company should not be held liable in damages. The court held, after a full discussion of the authorities, that the unlawful act of Mrs. Pearlman did not constitute a defense unless it was a direct and proximate cause of the injury.

The leading case on the subject is that of *Messersmith* v. *American Fidelity Company*, 232 N. Y. 161, 133 N. E. 432, 19 A. L. R. 876. In this case, after a thorough discussion of the facts, the court concluded defendant was liable under the policy even though the use of the automobile at the time of the accident was in violation of the highway law.

In the case of *Fireman's Fund Insurance Company* v. *Haley*, 129 Miss. 525, 92 S. 635, 636, 23 A. L. R. 1470, the court said: "There is no provision in the policy providing for nonliability in case, at the time of an accident, the insured is violating the speed laws of the State. It is 'hornbook' law that these insurance policies, which are prepared by the insurance companies, are to be most strongly construed against them and in favor of the assured, and, where there is no provision in them exempting it from liability, the mere fact that these statutes may have been violated is no defense."

See also *Fischer* v. *Midland Casualty Co.* 189 Ill. App. 486; *Moore* v. *Hart*, 171 Ky. 725, 188 S. W. 861;

*Lindsey* v. *Cecchi*, 3 Boyce (Del.), 80 Atl. 523, 35 L. R. A. (N. S.) 699; *Bourne* v. *Whitman*, 209 Mass. 155, 95 N. E. 404, 35 L. R. A. (N. S.), 701; *Rowe* v. *United Commercial Travelers of America*, 186 Ia. 454, 172 N. W. 454, 4 A. L. R. 1235, 1236. In this case it was held: "Under a provision of an accident insurance policy that it shall not extend to or cover any death, disability or loss resulting from the violation of any law, the mere fact that at the time of injury insured was driving an automobile at a speed which the statute declares to be presumptively negligent, for which it provides punishment, does not prevent recovery, but it must in addition be established that the injury was caused by or resulted from such violation of law."

This we think disposes of the two main points in the case before us. As stated heretofore there were ten assignments of error, but it is very apparent that they can have no bearing on the case if the court was right in construing the evidence and instructing the jury as it did. All the instructions asked for by the plaintiff in error involve the theory of the plaintiff in error which was untenable in our view and were properly refused. The action of the court in excluding evidence and admitting evidence falls also within the views just expressed.

■ We, therefore, conclude that as a matter of law, Catherine Norwood had permission to operate the automobile, indeed that it was practically her car; that the court was right in excluding the evidence as to whether she had secured a permit to operate the car on the streets of Roanoke, because her failure so to do was not shown to have had any connection with the happening of the accident. The authorities, we think, are very clear on this point and introduction of

evidence of failure to secure a permit into the case would have tended to confusion.

We are of opinion, therefore, to affirm the verdict and judgment of the trial court.

*Affirmed.*