## JONES v. NEW YORK CASUALTY CO.
### No. 383.

District Court, E. D. Virginia, Alexandria Division.

July 16, 1938.

Clyde B. Lanham, of Alexandria, Va. (Joseph A. Billingsley, of King George, Va., on the brief), for plaintiff.

Harry A. Grant, of Washington, D. C., and John Locke Green, of Arlington, Va., for defendant.

POLLARD, District Judge.

This is an action by Moltie M. Jones, Administratrix of the estate of Sidney Jones, against the New York Casualty Company, to recover of the defendant the sum of $5,000 alleged to be due the plaintiff by virtue of a certain insurance policy issued by the defendant upon an automobile of one Ruth Goodrick, the named assured, for the wrongful death of said Sidney Jones occasioned by the negligent operation of said automobile. At the time of the death of Sidney Jones the automobile was in the possession of Thomas Piercy, the son of Ruth Goodrick, and was being driven by Henry Windsor, a friend of Thomas Piercy. The plaintiff obtained a judgment against Thomas Piercy in the Circuit Court for King George County, Virginia, on March 18, 1938, on which execution was issued and returned "no effects". Thereafter plaintiff instituted this suit in said Circuit Court for King George County and the same was removed to this Court. The jurisdiction of this Court is invoked by reason of a controversy between citizens of different states in an action involving a sum in excess of $3,000.

Plaintiff alleges that at the time of the accident the automobile in question was being operated or caused to be operated by Thomas Piercy with the permission of the named assured, and that therefore Thomas Piercy was an additional assured and covered by the terms of the policy. Defendant contends that the permission given by the named assured to Thomas Piercy was only to use the automobile for a specified purpose, that Thomas Piercy deviated from the purpose for which he was given permission to use the automobile, that he was not operating or causing to be operated the said automobile with the permission of the named assured, and was therefore not an additional assured under the terms of the policy. Defendant also claims that Thomas Piercy had no permission at all to allow anyone else to operate the automobile, and that because it was being operated by Henry Windsor at the time of the accident the automobile was not covered by the policy.

At the trial both parties by written stipulation waived a jury and submitted all matters of law and fact to the Court for determination.

The facts are undisputed that on the evening of August 14, 1936, Thomas Piercy, an infant, obtained possession of the automobile in question and proceeded to the Washington Woolen Mills to see Sidney Jones, and that after talking to Jones and picking up him and several other friends they all proceeded to Colonial Beach, Virginia, which, by the route they took, was some thirty-seven miles from Fredericksburg, Virginia, the point of beginning. The purpose in going to Colonial Beach was to attend a dance there. After the dance Thomas Piercy returned to the automobile and found Henry Windsor, one of the party, sitting behind the steering wheel. Thomas Piercy thereupon got in the rumble seat and they proceeded homeward with Henry Windsor driving. While they were thus proceeding the accident happened.

There is a serious conflict in the evidence as to the circumstances under which Thomas Piercy obtained possession of the automobile. Plaintiff has introduced some evidence to the effect that Thomas Piercy had general permission to use the automobile and on the evening in question was given a special permission to use the automobile for a trip to Colonial Beach. The defendant's evidence tends to show that Thomas Piercy drove the automobile quite frequently, sometimes to Colonial Beach, but on each occasion obtained express permission from the named assured to use it; that on the evening of the accident Thomas Piercy obtained permission from the named assured to use the automobile to go to the Washington Woolen Mills to see Sidney Jones, but that he did not seek nor get permission to go

anywhere else; and that he had been denied permission to go to Colonial Beach on previous occasions. The Court has carefully weighed all of the evidence on this point and has concluded that the plaintiff has not shown by a preponderance of the evidence that Thomas Piercy had a general permission to use the automobile or that he had a special permission to use the automobile to go to Colonial Beach on the evening of the accident, but that he was only given permission to go to the Washington Woolen Mills to see Sidney Jones.

The provision of the insurance policy upon which plaintiff seeks to recover provides as follows:

"Additional Assured

"VII. The insurance granted by this Policy shall apply to additional Assured as follows: Any person or organization using the automobile, or legally responsible for its use, provided such use is with the permission of the Named Assured who, if an individual, may grant such permission through an adult member of the Named Assured's household other than a chauffeur or domestic servant."

■ The Court has no difficulty in disposing of defendant's contention that there is no coverage because Henry Windsor was operating the automobile at the time of the accident. A judgment has been obtained against Thomas Piercy, and the question for the Court to determine is whether Thomas Piercy was an additional assured under the terms of the policy. Thomas Piercy, although not driving the automobile at the time of the accident, was using it. He was riding in the car and Henry Windsor was driving it for him. Thomas Piercy was legally responsible for its use. Indeed, the Circuit Court for King George County must have found that at the time of the accident Henry Windsor was the agent of Thomas Piercy, or it would not have rendered a judgment against Thomas Piercy. Under the express language of the policy in suit, if Thomas Piercy was, with the permission of the named assured, "using" the automobile, or "legally responsible for its use", he is covered by the policy. The policy does not require that he must have been "operating" the automobile with the permission of the named assured. The Court finds as a matter of law that Thomas Piercy was at the time of the accident "using" the automobile in the sense that is contemplated by the terms of the policy.

The next question for determination is whether Thomas Piercy was so using the automobile with the permission of the named assured. For the purpose of determining this question it will be assumed as a fact, so found upon the conflict in the evidence, that Thomas Piercy was only given permission by the named assured to go to the Washington Woolen Mills to see Sidney Jones, and that in going to Colonial Beach he made a marked and unusual deviation from the permission that had been given him.

Where there has been a deviation from the use for which permission or consent was granted, there is a division in the authorities as to the construction which should be placed upon the words "permission or consent of the named assured" as used in the ordinary omnibus clause of an insurance policy. One line of authorities holds to the view that permission or consent to the particular use being made of the car must have been given, and in order to classify the person using the automobile as an additional assured under the policy he must be using the car at the time of the accident in a manner and for a purpose contemplated by the permission or consent given by the named assured. Another line of authorities holds to the view that only permission or consent to take and use the car must have been given, and in order to classify the person using the car as an additional assured all that is necessary is that he must have permission or consent to start out with the automobile in the first instance. The leading case in support of the doctrine last mentioned is Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A. L.R. 500. That case has been followed by many others, notably the case of Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368, and other cases cited in the note at page 1405. The first or contra doctrine is adhered to in a number of cases, including decisions by federal courts of other circuits, cited in said note at page 1403 in 72 A.L.R.

■ In the instant case the policy was issued in Virginia and the accident occurred in that State. Under the doctrine recently announced in Erie Railroad Co. v. Tompkins, 58 S.Ct. 817, 82 L.Ed. ——, 114 A.L.R. 1487, the law of Virginia as determined by its legislature and highest court is decisive in an action of this kind, and under the doctrine announced in Ruhlin v. New York Life Ins. Co., 58 S.Ct. 860, 82 L.Ed. ——, it

becomes the duty of this Court to search for and apply the entire body of the substantive law governing an identical action in the state court.

The material parts of sections 4326a and 5143 of the Code of Virginia provide as follows:

"§ 4326a. Third person injured by a party carrying indemnity insurance subrogated to rights of such party.—No policy of insurance against loss or damage resulting from accident to or injury suffered by an employee or other person and for which the person insured is liable, * * * shall be issued or delivered to any person in this State by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision that the insolvency * * * of the person insured shall not release the insurance carrier from the payment of damages for injuries sustained or loss occasioned during the life of such policy, and stating that in case execution against the insured is returned unsatisfied in an action brought by the injured person, or his or her personal representative in case death results from the accident, because of such insolvency, * * * then an action may be maintained by the injured person, or his or her personal representative, against such corporation under the terms of the policy for the amount of the judgment in the said action not exceeding the amount of the policy.

\* \* \* \* \* \*"

"§ 5143. When person not named a party, or named jointly with others, may take or sue under instrument.—An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well."

The policy here sued on contains the following condition:

"Any specific Statutory Provision in force in the State in which it is claimed that the Assured is liable for any such loss as is covered hereby shall supersede any provision in this Policy inconsistent therewith."

Moreover, the policy itself contains a clause providing substantially as required by section 4326a, supra.

The question of the extent of the permission or consent required in order to hold the user of the automobile to be an additional assured was first discussed by the Virginia Court in the case of Maryland Casualty Co. v. Hoge, 153 Va. 204, 149 S. E. 448. In that case there had been a judgment in favor of Hoge against one Catherine Norwood, who at the time of the accident was driving the automobile of her husband, R. L. Norwood, the named assured in a policy issued by the Maryland Casualty Company, and Hoge sought to hold the insurance company liable on the ground that said Catherine Norwood was an additional assured. The insurance company denied liability on the ground that she was driving the automobile at the time of the accident without the permission of the named assured, and was therefore not an additional assured within the terms of the policy. The facts disclosed that R. L. Norwood, the named assured, at the time he purchased the automobile and at all times thereafter had given his wife a general permission to drive said automobile whenever and wherever she wished, but that on the afternoon of the accident there was a storm brewing and he had forbidden her to use the car that afternoon because of the storm; that the storm blew over in about an hour and sometime thereafter his wife took the automobile out and the accident happened. R. L. Norwood testified that his only reason for refusing her the use of the automobile on that afternoon was because of the storm, and that he did not mean by such refusal to revoke her general permission to use the car. The Court stated that the case rested upon two clearcut issues, the first of which was whether Catherine Norwood was driving the car with the consent and permission of the assured. Under that set of facts the Court held the defendant liable on the ground that Catherine Norwood had the permission contemplated by the terms of the policy to

drive the automobile at the time of the accident. The Court based its holding upon two reasons. Its first reason was stated as follows (page 449):

"* * * It is perfectly clear from the testimony of R. L. Norwood that his wife had his permission and consent to use the car, and that his direction that she take the car home was only a precautionary one under the circumstances and conditions as they existed at that particular time, and that there was no intention to revoke any general authority his wife had, which was full and complete, to operate the car."

The Court may or may not have been satisfied with the soundness of the above reason, but in any event it proceeded to advance an additional reason for its conclusion. The Court quoted at great length from the case of Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500. In that case the insurance company issued a policy to one Donato Maisano as the named assured with a clause providing coverage for an additional assured using or operating the car with the permission of the named assured or an adult member of his household. Louis Maisano, a brother of the named assured and an adult member of his household, gave permission to one Riccitelli to use the automobile to "go home and change his clothes". Riccitelli took the car and instead of going home to change his clothes went off on a joy ride and one Dickinson, an invited guest in the car during the ride, received injuries in an accident which resulted in his death. A judgment was obtained against Riccitelli and he brought suit against the insurance company claiming that it had indemnified Riccitelli who was driving the car of the assured. The plaintiff there succeeded in his action, the Connecticut Court holding the insurance company liable on the ground that Riccitelli was an additional assured.

The Dickinson Case, from which the Virginia Court quoted at length, is the head of a line of authorities which adhere to the doctrine that a qualified permission or consent by the named assured to another to use his automobile should be construed under the language of the ordinary omnibus clause of a policy to mean a general permission or consent; and that once another party gets permission or consent from the named assured to start out with the automobile, even though his permission or consent be qualified, if he deviates from the terms of his permission or consent, he is still using the car with the permission or consent of the named assured and is considered an additional assured in contemplation of the policy. This view is adopted on the theory that a clause in a policy providing that anyone who may be using the automobile "with the permission or consent of the named assured" is ambiguous as to the kind of permission or consent that is required; that the ambiguity should be construed against the insurance company, which drafted the policy; that to admit the power of the named assured to grant a qualified permission or consent would give rise to an inquiry in each case as to the terms of the permission or consent; that if the company had contemplated that such a permission or consent could be given and a deviation from that permission or consent would avoid the policy, it would have expressly so provided in the policy.

After making lengthy quotations from the Dickinson Case setting forth the reasons given by the Connecticut Court in advancing the doctrine there announced, the Supreme Court of Appeals of Virginia in the Hoge Case said:

"The substance of the above decision is that the permission contemplated in the policy means a permission to use the car generally, and not a permission to use the car in a specified manner and for a specified purpose."

In view of the well-defined division in the authorities it does not seem probable that the Virginia Court would have ventured to cite with apparent approval the leading case adopting one of these views and base its conclusion at least partly on that doctrine unless it intended to embody that doctrine into the Virginia law; and this is especially true in view of the fact that the Court had already given one apparently sound reason as the basis of its decision.

The only other Virginia cases bearing on the point are: Indemnity Insurance Co. v. Jordan, 158 Va. 834, 164 S.E. 539; Ellis v. New Amsterdam Casualty Co., 194 S.E. 687; and Phoenix Indemnity Co. v. Anderson, 196 S.E. 629.

In the Jordan Case the court referred to the case of Maryland Casualty Co. v. Hoge, supra, and distinguished it as not applicable to the facts of that case. It did not reject the doctrine adopted in the Hoge Case. This is especially significant in view of the fact that just before referring to the Hoge Case it referred to the case of

Odden v. Union Indemnity Co., 156 Wash. 10, 286 P. 59, 72 A.L.R. 1363, and in addition to distinguishing that case it emphatically rejected the doctrine announced in that case. The court also referred to and distinguished the Dickinson Case, supra, and the Stovall Case, supra, without rejecting the doctrine followed in those cases.

In the Ellis Case the court held that the automobile was not covered by the policy at the time of the accident because said autobile, which was a light delivery truck, was expressly declared in the policy to be a "commercial delivery" vehicle, and that at the time of the accident it was being used for pleasure. The holding was not predicated upon the fact that the driver had deviated from the permission given him by the named assured, but upon the fact that the vehicle was expressly insured as a "commercial delivery" vehicle exclusively and was at the time of the accident being used for pleasure.

In the Anderson Case the automobile was insured as a commercial vehicle and was being used at the time of the accident for pleasure. The court held that the use of the automobile at the time of the accident was neither permissive nor commercial. The court pointed out that it was not dealing with a deviation but with an independent venture, unrelated to the assured's business. This is the real basis of the decision in that case. In the Anderson Case the accident happened in North Carolina and the policy was issued there, and the court said that it was governed by the substantive law of that State. No reference is made to the Hoge Case.

From a careful consideration of these authorities, this Court is constrained to conclude that the Supreme Court of Appeals of Virginia has adopted as the Virginia law the doctrine announced by the Dickinson Case as applicable to a state of facts identical with the facts of that case. While the facts in the Dickinson Case and in the instant case are different in certain respects, they are in legal effect identical. This being so, it is the duty of this Court to find that the permission or consent given by Ruth Goodrick to Thomas Piercy to use the automobile, although qualified, must be construed in contemplation of the policy as a permission or consent for Thomas Piercy to use the automobile for the purpose it was being used at the time of the accident, and that Thomas Piercy was within the contemplation of the policy using the car at the

time of the accident with the permission or consent of the named assured. This Court therefore holds that Thomas Piercy was an additional assured at the time of the accident and the defendant is liable to the plaintiff on said policy.