## JORDAN v. SHELBY MUT. PLATE GLASS & CASUALTY CO. (two cases).

### Civil Actions Nos. 62, 63.

District Court, W. D. Virginia, at Danville.

Aug. 27, 1943.

Carter & Williams, of Danville, Va., for plaintiff.

Williams, Robertson & Sackett, of Lynchburg, Va., for defendant.

BARKSDALE, District Judge.

As this case is to be disposed of upon motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, I take it that I am not required by Rule 52 of the Federal Rules of Civil Procedure to find the facts and state separately my conclusions of law thereon. But as some statement of fact is necessary to make this memorandum of opinion intelligible, briefly the facts are as follows:

### The Facts.

At and before the time of the accident which is the basis of this action, Thomas J. Hurley was employed by a partnership composed of B. J. and F. P. Kavanaugh, trading as "Lynchburg Rendering Company" and doing business in Lynchburg, Virginia. On May 19, 1938, at the direction of his employer, Hurley drove an automobile owned by his employer from Lynchburg to Winston Salem, N. C., for the purpose of checking in a shipment of hides sold by his employer to a purchaser there. This automobile was kept in the possession of the employer and used by Hurley only occasionally when directed to use it for a specific business purpose. He had never

used this or other automobiles of his employer for his own purposes, nor had he ever had this car, or others of his employer, in his possession, except while transacting business for his employer. Hurley, as well as other employees, had been instructed by the employer to never use the company's automobiles for pleasure or personal affairs, or to permit any passengers to ride with them. Nevertheless, contrary to these instructions, Hurley, unknown to his employer, took a friend, one Marcotte, with him from Lynchburg to Winston Salem. Upon arriving there, Hurley found that his business could not be transacted on that day. He telephoned his employer, and was instructed to spend the night in Winston Salem, accomplish his mission the next day, and return to Lynchburg. Thereupon, the friend, Marcotte, insisted that he was obliged to be in Lynchburg the next morning. Solely to accommodate his friend, Hurley then drove his employer's automobile back to Danville, Virginia, hoping that Marcotte could find someone there who would take him to Lynchburg that night. Not finding anyone at Danville who was going to Lynchburg, Hurley then proceeded to drive Marcotte further along the route to Lynchburg, and before reaching Chatham Hurley collided with another automobile, resulting in injuries to Charlie Wilbrun Wheeling and Roma Ferguson Wheeling. Suits were instituted by them and final judgments obtained against Hurley in a state court. In one action, a judgment was also obtained against the employer, upon the theory that Hurley, at the time of the accident, was the agent of his employer. Upon appeal, the judgment against the employer was set aside, the judgment against Hurley being left undisturbed, no appeal having been taken therefrom. Kavanaugh v. Wheeling, 175 Va. 105, 7 S.E.2d 125. Subsequently, both Charlie Wilbrun Wheeling and Roma Ferguson Wheeling were adjudicated bankrupts, and these actions (now consolidated as one action) were brought by their trustees against the insurer of the employer upon the theory that Hurley was an additional insured under the omnibus clause of the employer's public liability insurance policy.

## Conclusions of Law.

The pertinent provision of the insurance policy, under which the plaintiff seeks to recover here, is as follows: "Definition of 'Insured.' The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to these coverages includes not only the named insured but also *any person while using the automobile* and *any person* or organization *legally responsible for the use thereof,* provided that the declared and actual use of the automobile is 'pleasure and business' or 'commercial', each as defined herein, and provided further that the actual use is *with the permission of the named insured."* (Italics mine)

The pertinent portion of Section 4326a of the Code of Virginia, which must be construed as if it were included in the contract of insurance, Newton v. Employers etc., 4 Cir., 107 F.2d 164, 166, is as follows: "* * * No such policy shall be issued or delivered in this State, to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same *with the permission, express or implied,* of such owner." (Italics mine)

The statutory language is slightly more favorable to the plaintiff in that it uses the expression, "permission, express or implied, of such owner"; while the language of the policy provision is "the permission of the named insured." Hence, it will be seen that the sole and only question for determination here is whether or not Hurley, the employee of the named insured, was, at the time of the accident which is the basis of this action, operating his employer's automobile with the permission, express or implied, of his employer, the named insured. I am satisfied that Hurley was not at that time operating his employer's automobile with any kind of permission of his employer whatsoever. And, in passing, it is interesting to note that, when another phase of this case was before our Supreme Court of Appeals (Kavanaugh v. Wheeling, 175 Va. 105, at page 115, 7 S.E.2d 125, at page 129), our court, by way of dictum, said: "There is no contradiction of the evidence of either the employers or the driver (Hurley) that the latter used the car without the consent

of the former for a purpose directly contrary to the specific instructions of his employers."

■ Of course, under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, this is a case for the application of Virginia law. I find no Virginia decision which, in my opinion, requires the conclusion that, under the facts existing here, Hurley was operating his employer's automobile with permission, at the time of the accident.

Of the Virginia cases, plaintiff relies principally upon Maryland Casualty Co. v. Hoge, 153 Va. 204, 149 S.E. 448, and Jones v. New York Casualty Co., D.C.E.D.Va., 23 F.Supp. 932. In his opinion in the Jones case, Judge Pollard concluded that the Hoge case had adopted the doctrine of the case of Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500, as the law of Virginia. It is true that the opinion in the Hoge case quotes with apparent approval lengthy excerpts from the opinion in the Dickinson case. In his opinion (23 F.Supp. at page 934), Judge Pollard seems to have assumed that the Dickinson case compelled the conclusion that, "* * * in order to classify the person using the car as an additional assured, all that is necessary is that he must have permission or consent to start out with the automobile in the first instance." Even if the Dickinson case required such a conclusion, which I doubt, I do not believe that the Hoge case indicates the adoption of such a doctrine as the law of Virginia. In the Hoge case, our court said of the Dickinson case (153 Va. at page 214, 149 S.E. at page 451): "The substance of the above decision is that the permission contemplated in the policy means a permission to use the car generally, and not a permission to use the car in a specified manner and for a specified purpose."

In my opinion, the decision of the Hoge case was grounded upon the sound conclusion that the wife of the named insured was operating the automobile at the time of the accident with the permission of her husband. In fact, the Court said (153 Va. at page 219, 149 S.E. at page 452): "We therefore conclude that as a matter of law Catherine Norwood had permission to operate the automobile, indeed, that it was practically her car * * *."

I think that both the Hoge case and the Jones case are clearly distinguishable from the instant case, upon the facts. Both these cases were cases of family use for non-business purposes. The use of the car in the Dickinson case was not for a business purpose. Counsel for defendant here make what I believe to be the sound suggestion that a general permission, or a comprehensive permission, is much more readily to be assumed where the use of the car is for social or non-business purposes, than where the relationship of master and servant exists and the usage of the car is for business purposes.

It seems to me that the case of Phoenix Indemnity, etc., v. Anderson, etc., 170 Va. 406, 196 S.E. 629, is determinative of the issue here. It is true that in this case the Virginia Court was applying North Carolina law and the use of the car was limited to "commercial" in the policy, but one of the issues in the case was whether or not an employee was operating his employer's automobile with permission, just as that question is presented in the instant case. The facts as to usage of the automobile by the employee are quite similar. In holding that permission by an employer to his employee to drive employer's automobile from Wake Forest to Raleigh and return, for a business purpose, did not include permission to the employee to drive the automobile toward Durham for his own personal pleasure, the Court said (170 Va. at page 411, 196 S.E. at page 631): "To ask one to believe that this midnight ride towards Durham was either permissive or commercial is to ask too much." And further (170 S.E. at page 414, 196 S.E. at page 633):

"We are also told that delivering an automobile by the assured to another with permission to use it for a particular purpose carries with this permission the right of indefinite use. There are cases which so hold. A leading case to that effect is Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368. An elaborate discussion of this subject will be found in a note to the Stovall case in 72 A.L.R. 1375 et seq.

"Outside of court one would be surprised to learn that permission to drive to Raleigh carried with it permission to drive to El Paso. In the instant case, Johnson drove to Raleigh, not under general permission, but under an express order to proceed to that city, purchase perishable produce, and to return with it promptly to Wake Forest. No liberality of construction can turn these directions into a general permit to use the truck for pleasure purposes."

In regard to the cases relied upon by the plaintiff from jurisdictions other than Virginia, I agree with plaintiffs' counsel that the case of Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368, supports plaintiffs' contention here. However, I am satisfied that this case was wrongly decided, and that the Supreme Court of Appeals of Virginia, in the Phoenix case, disapproved it, as clearly shown by the above quotation from the Phoenix case.

The facts in the case of American Casualty Co. v. Windham, D. C., 26 F.Supp. 261, 5 Cir., 107 F.2d 88, cited by plaintiffs' counsel in his brief, are so entirely different from the facts here as to render this case of no assistance to plaintiffs, and on the other hand, it would seem to me to support defendant's views.

In their brief, defendant's counsel make the following quotation from page 410 of 170 Va., 196 S.E. on page 631, of the case of Phoenix Indemnity Co. v. Anderson, supra: "Accurately speaking, Johnson was not using this truck with permission at all. He was *ordered* to take it to Raleigh, load it up with produce purchased at the city market there, and return to Wake Forest early the next morning. The only *permission* which he had was permission to do those things which he was *instructed* to do. He was never given permission to use this truck 'for his own personal business or pleasure,' and his only liberty of action was that he might go to his brother's the night before, keep the truck in his brother's garage, spend the night with him, and return early the next morning; or to go to Raleigh sufficiently early in the morning to enable him to return with the produce to be offered in that day's business." (Italics supplied.)—with the statement that, reading the above expression of the Court in the light of the uncontradicted facts of the instant case, the following statement would be justified here: "Accurately speaking, Hurley was not using the Kavanaugh automobile with permission at all. He was ordered to take it to Winston-Salem for the purpose of checking in some hides purchased at Schwartz & Company there, and to return immediately to Lynchburg. The only permission which he had was permission to do those things which he was instructed to do, namely: to go to Winston-Salem on a designated route, to check in hides at Schwartz & Company, and to return by the same route to Lynchburg. He was never given permission to use this automobile 'for his own personal business or pleasure', and his only liberty of action was that upon getting to Winston-Salem and finding his task impossible of completion on that day he should remain in Winston-Salem overnight, complete his work the next morning, and then return to Lynchburg."

I agree with counsel. At the time of the accident here complained of, Hurley just simply did not have any permission of his employer for such use of the automobile. He was on an independent excursion of his own. In making use of his employer's car, as he was at the time of the accident, he not only had no kind of permission, but he was violating the well established understanding between himself and his employer, and the positive instructions of his employer in several particulars.

It is therefore my conclusion that plaintiffs are not entitled to recover, and an order will be entered accordingly.