**JORDAN v. SHELBY MUT. PLATE GLASS & CASUALTY CO. (two cases).**

Nos. 5218, 5219.

Circuit Court of Appeals, Fourth Circuit.

April 11, 1944.

Langhorne Jones, of Chatham, Va. (Carter & Williams, of Danville, Va., on the brief), for appellants.

Henry M. Sackett, Jr., and Samuel H. Williams, both of Lynchburg, Va., for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

The facts, about which there is little or no dispute, of these cases (which were heard together), were thus set out by Judge Barksdale in his opinion below, D.C., 51 F.Supp. 240:

"At and before the time of the accident which is the basis of this action, Thomas J. Hurley was employed by a partnership composed of B. J. and F. P. Kavanaugh, trading as 'Lynchburg Rendering Company' and doing business in Lynchburg, Virginia. On May 19, 1938, at the direction of his employer, Hurley drove an automobile owned by his employer from Lynchburg to Winston Salem, N. C., for the purpose of checking in a shipment of hides sold by his employer to a purchaser there. This automobile was kept in the possession of the employer and used by Hurley only occasionally when directed to use it for a specific business purpose. He had never used this or other automobiles of his employer for his own purposes, nor had he ever had this car, or others of his employer, in his possession, except while transacting business for his employer. Hurley, as well as other employees, had been instructed by the employer never to use the company's automobiles for pleasure or personal affairs, or to permit any passengers to ride with them. Nevertheless, contrary to these instructions, Hurley, unknown to his employer, took a friend, one Marcotte, with him from Lynchburg to Winston Salem. Upon arriving there, Hurley found that his business could not be transacted on that day. He telephoned his employer, and was instructed to spend the night in Winston Salem, accomplish his mission the next day, and return to Lynchburg. Thereupon, the friend, Marcotte, insisted that he was obliged to be in Lynchburg the next morning. Solely to accommodate his friend, Hurley then drove his employer's automobile back to Danville, Virginia, hoping that Marcotte could find someone there who would take him to Lynchburg that night. Not finding anyone at Danville who was going to Lynchburg, Hurley then proceeded to drive Marcotte further along the route to Lynchburg, and before reaching Chatham Hurley collided with another automobile, resulting in injuries to Charlie Wilbrun Wheeling and Roma Ferguson Wheeling. Suits were instituted by them and final judgments obtained against Hurley in a state court. In one action, a judgment was also obtained against the employer, upon the theory that Hurley, at the time of the accident, was the agent of his employer. Upon appeal, the judgment against the employer was set aside, the judgment against Hurley being left undisturbed, no appeal having been taken therefrom. Kavanaugh v. Wheeling, 175 Va. 105, 7 S.E.2d 125. Subsequently, both

Charlie Wilbrun Wheeling and Roma Ferguson Wheeling were adjudicated bankrupts, and these actions (now consolidated as one action) were brought by their trustees against the insurer of the employer upon the theory that Hurley was an additional insured under the omnibus clause of the employer's public liability insurance policy."

The insurance policy, on which appellant relies, reads:

"Definition of 'Insured.' The unqualified word 'insured' wherever used in coverages A and B and in other parts of this policy, when applicable to these coverages includes not only the named insured but also *any person while using the automobile* and *any person* or organization *legally responsible for the use thereof,* provided that the declared and actual use of the automobile is 'pleasure and business' or 'commercial', each as defined herein, and provided further that the actual use is *with the permission of the named insured."* (Italics ours.)

Section 4326a of the Code of Virginia makes the following provision, which is conventionally known as "the omnibus clause":

" * * * No such policy shall be issued or delivered in this State to the owner of a motor vehicle, by any corporation or other insurer authorized to do business in this State, unless there shall be contained within such policy a provision insuring such owner against liability for damages for death or injuries to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person legally using or operating the same *with the permission, express or implied,* of such owner."  (Italics ours.)

■ It is conceded that we must here apply the law of Virginia. And, as Judge Barksdale pointed out, it was expressly stated by the Supreme Court of Appeals of Virginia, Kavanaugh v. Wheeling, 175 Va. 105, 115, 7 S.E.2d 125, 129:

"There is no contradiction of the evidence of either the employers or the driver (Hurley) that the latter used the car without the consent of the former for a purpose directly contrary to the specific instructions of his employers."

We are convinced, after a careful study of the Virginia cases, that Judge Barksdale arrived at the correct conclusion when

he granted the motion of the defendant-insurer for a summary judgment in its favor.

■ We agree with Judge Barksdale that the opinion of the highest Virginia court in Phoenix Indemnity Co. v. Anderson & Powell, Receivers (hereinafter called the Anderson case), 170 Va. 406, 196 S.E. 629, is determinative of the instant case. Counsel for appellant strenuously attempt to distinguish that case from the instant case on two grounds: (1) The Virginia court, in the Anderson case, was applying the law of North Carolina and not the law of Virginia; (2) in the Anderson case, the coverage of the policy was limited to commercial purposes, while the instant coverage included both commercial and social purposes.

The answer to the first of appellant's contentions, we think, is that the Virginia court decided the Anderson case on principle, and not on the authority of North Carolina decisions. The Virginia court, too, used language (hereinafter set out) which, to our minds, shows clearly that this court decided on the law which the court thought was the law and also ought to be the law, with a crisp indication that the same result would have been reached had the court been determining the apposite law of Virginia.

As to appellant's second contention, we point out that the specific *ratio decidendi* of the Anderson case was not the fact that the policy-coverage there was limited to commercial purposes. On the contrary, the court expressly held that the use of the car there was not with the permission of the owner, and therefore the "omnibus clause" did not apply. The facts of the two cases, the Anderson and the instant case, are more than strikingly similar.

The facts of the Anderson case, as set out in the opinion of Associate Justice Holt (170 Va. at pages 408, 409, 196 S.E. at page 630), were:

"This corporation (the Royall Grocery Company) owned a half ton Ford truck. Two or three times a week, Royall (Secretary and Treasurer of the Royall Grocery Company) would send Johnson (an employee of the Royall Grocery Company) in it to Raleigh to purchase fresh vegetables for the Wake Forest store. They would be brought in the early morning by farmers from the surrounding country to the city market, and it was from them

that purchases were made by Johnson with money given him for that purpose by Royall. Sometimes Johnson would start in the early morning, and sometimes he would start in the evening, after business hours, in order that he might spend the night with his brother who lived in Raleigh and make an early return to Wake Forest, 16 miles away. His duty, and his only duty, was to purchase these fresh vegetables and to bring them, still fresh, to the Wake Forest store.

"On the evening of November 8, 1935, Royall, in accordance with an established custom, gave Johnson money and sent him to Raleigh to make purchases for tomorrow's trade. The Wake Forest store closed at half past six. Johnson ate dinner at home and then drove straight to his brother's house, which he reached somewhere between 7:30 and 8 o'clock. Within about an hour he left it and went to the market to see if he could pick up bargains already there. He bought nothing but drank to an extent not stated. Thereafter he started to return to his brother's house but chanced to remember a friend, Bobbitt, who had once driven a truck for the Royall Grocery Company, but who had been discharged and was then working at Staubt's bakery. Bobbitt was at work and did not get off until 11 o'clock. They then went in Bobbitt's car to a 'nip joint,' where they took a drink, and from there to a café for lunch. Bobbitt went back to his work and Johnson to his truck parked near the bakery. He turned into Hillsboro street and to his left instead of to his right, which would have taken him back to his brother's home; 'I discovered my mistake after I had gone several blocks, and I decided that I did not want to go home then, so I continued to ride,' out towards Durham on United States Highway No. 1, until he reached a point about 5½ miles from the State Capitol, when he ran off the road and into an instrument case which operated crossing signals at Thompson's crossing on the Seaboard Air Line, doing damage in amount $1,108.32."

Three quotations from the opinion in the Anderson case (set out by Judge Barksdale) are very much in point. Thus (at 170 Va. page 411, 196 S.E. at page 631) Judge Holt said:

"To ask one to believe that this midnight ride towards Durham was either permissive or commercial is to ask too much."

And, again (at 170 Va. page 414, 196 S.E. at page 633) we find:

"We are also told that delivering an automobile by the assured to another with permission to use it for a particular purpose carries with this permission the right of indefinite use. There are cases which so hold. A leading case to that effect is Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368. An elaborate discussion of this subject will be found in a note to the Stovall case in 72 A.L.R. 1375 et seq.

"Outside of court one would be surprised to learn that permission to drive to Raleigh carried with it permission to drive to El Paso. In the instant case, Johnson drove to Raleigh, not under general permission, but under an express order to proceed to that city, purchase perishable produce, and to return with it promptly to Wake Forest. No liberality of construction can turn these directions into a general permit to use the truck for pleasure purposes."

While (at 170 Va. page 410, 196 S.E. at page 631), it was stated:

"Accurately speaking, Johnson was not using this truck with permission at all. He was *ordered* to take it to Raleigh, load it up with produce purchased at the city market there, and return to Wake Forest early the next morning. The only *permission* which he had was permission to do those things which he was *instructed* to do. He was never given permission to use this truck 'for his personal business or pleasure', and his only liberty of action was that he might go to his brother's the night before, keep the truck in his brother's garage, spend the night with him, and return early the next morning; or to go to Raleigh sufficiently early in the morning to enable him to return with the produce to be offered in that day's business." (Italics supplied.)

And, in the light of this last extract, we agree with counsel for appellee, that mutatis mutandis, the following statement would be justified in the instant case:

"Accurately speaking, Hurley was not using the Kavanaugh automobile with permission at all. He was ordered to take it to Winston-Salem for the purpose of checking in some hides purchased at Schwartz & Company there, and to return immediately to Lynchburg. The only permission which he had was permission to do those things which he was instructed

to do, namely: to go to Winston-Salem on a designated route, to check in hides at Schwartz & Company, and to return by the same route to Lynchburg. He was never given permission to use this automobile 'for his own personal business or pleasure', and his only liberty of action was that upon getting to Winston-Salem and finding his task impossible of completion on that day he should remain in Winston-Salem overnight, complete his work the next morning, and then return to Lynchburg."

See, also, Indemnity Insurance Co. v. Jordan, 158 Va. 834, 164 S.E. 539.

We now come to the cases on which the appellant relies. Probably the strongest of these in appellant's favor is Stovall v. New York Indemnity Co., 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368; but the doctrine of the Stovall case was twice disapproved by the opinion in the Anderson case. This brings us to the Virginia cases of Maryland Casualty Co. v. Hoge, 153 Va. 204, 149 S.E. 448, and Jones v. New York Casualty Co., D.C., 23 F.Supp. 932, and the Connecticut case of Dickinson v. Maryland Casualty Co., 101 Conn. 369, 125 A. 866, 41 A.L.R. 500, cited in the Hoge and Jones cases.

As to these cases, Judge Barksdale said: "I think that both the Hoge case and the Jones case are clearly distinguishable from the instant case, upon the facts. Both these cases were cases of family use for non-business purposes. The use of the car in the Dickinson case was not for a business purpose. Counsel for defendant here make what I believe to be the sound suggestion that a general permission, or a comprehensive permission, is much more readily to be assumed where the use of the car is for social or non-business purposes, than where the relationship of master and servant exists and the usage of the car is for business purposes."

We fully agree with this. And Judge Pollard (sitting in the United States District Court for the Eastern District of Virginia) in the Jones case, 23 F.Supp. at page 937, said of the Anderson case:

"The court pointed out that it was not dealing with a deviation but with an independent venture, unrelated to the assured's business. This is the real basis of the decision in that case."

We develop briefly the principle just suggested above by Judge Barksdale. In the cases of the entrustment of the car to another for purely social purposes, a bailment for the sole benefit of the bailee, usually there exists between the bailor and bailee a rather close relationship, either kinship or friendship. Thus, in the Jones case, the bailee was the son of the bailor, and in the Hoge case the bailee was the wife of the bailor. And, usually, as to the extended use by the bailee of the automobile going beyond the express permission of the bailor, the permission of the bailor may well be implied. The extended use is the same type of use, for social purposes, as the use expressly permitted. Thus, if a father lends his car to a son for the purpose of attending a dance at the Hilltop Country Club, it is not difficult to imply, from the whole *milieu* of surrounding facts and circumstances, permission to use the car for the purpose of driving, after the dance, to a restaurant.

But, in the instant case, the use permitted (a purely business use) falls into a whole category utterly and entirely different from the extended use, which was solely for purposes personal to the bailee and utterly foreign to the purposes of the bailor. To imply here a permission in fact for the extended use would simply border on the grotesque.

We are here too (as Judge Pollard said of the Anderson case), "not dealing with a deviation but with an independent venture, unrelated to the assured's business." Had Hurley injured someone in the accident on the way from Lynchburg to Winston-Salem, we think the coverage of the "omnibus clause" would have attached, though Hurley carried a rider contrary to his employer's instructions. The same result, we think, would have attached had Hurley on this same trip, made some deviation from the route prescribed by the employer. But, in spite of (and contrary to) both general instructions before he started and very specific orders given to him over the telephone after he reached Winston-Salem, Hurley embarked upon his independent, ill-fated journey, which under no circumstances could have benefited, but which might have injured, his employer, the owner of the car.

Under facts somewhat similar to the instant case, this Court denied the coverage of the "omnibus clause" in United States Fidelity & Guaranty Co. v. Mann, 4 Cir., 73 F.2d 465. There the car was entrusted by the city of Charleston, South

Carolina, to one Moultrie Ball, City Superintendent of Parks, to be used by him in his official duties. Ball "directed his son to take the car and go downtown and bring home his mother, who was paying a social visit in the city." On this trip, the car, driven by the son, seriously injured Mrs. Mann. The language used in Judge Soper's opinion in the Mann case lends support to the conclusion which we have here reached. Compare the opinion of Judge Soper in Harrison v. Carroll, 4 Cir., 139 F.2d 427.

▇▇▇ We are not insensible to two principles urged by counsel for appellant. It is well settled that dubious provisions in insurance policies are to be construed adversely to the insurer. Equally is it true that the "omnibus clause" statute, as remedial legislation, must be liberally interpreted to subserve the clear public policy, reflected in the statute, to broaden the coverage of automobile-liability policies. These were considered below by Judge Barksdale, and the conclusion that he still reached in the light of these principles is believed by us to be entirely correct.

We, therefore, affirm the judgment of the District Court.

Affirmed.